**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

|  |  |  |
|---|---|---|
| BROOKLYN BEDDING, LLC ET AL., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | Court. No. 21-00285 |
| *Defendant*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFFRON LIVING CO., LTD. | ) | |
| | ) | |
| *Defendant-* | ) | |
| *Intervenor.* | ) | |
| | ) | |

## ORDER

Upon consideration of the Rule 56.2 motion of Plaintiffs Brooklyn

Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions,

FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt,

Incorporated, International Brotherhood of Teamsters, United Steel

Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial

and Service Workers International Union, AFL-CIO, all responses

thereto, and all other relevant papers and proceedings herein, it is hereby:

ORDERED that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is granted; and it is further

ORDERED that the U.S. Department of Commerce's final determination set forth in *Mattresses from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,928 (Mar. 25, 2021), is remanded for disposition in a manner consistent with the judgment of this Court.

SO ORDERED


Date:_____          Signed:_____
      New York, NY                                    M. Miller Baker, Judge

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| BROOKLYN BEDDING, LLC ET AL., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | Court. No. 21-00285 |
| *Defendant*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFFRON LIVING CO., LTD. | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |
| | ) | |

## PLAINTIFFS' RULE 56.2 MOTION FOR
## JUDGEMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiffs Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett & Platt, Incorporated; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, respectfully move for judgment

on the agency record in the above-referenced action.  For the reasons set forth in the Brief of Plaintiffs Brooklyn Bedding, LLC et al., in Support of Their Rule 56.2 Motion for Judgment on the Agency Record, Plaintiffs request that this Court hold that the final determination by the U.S. Department of Commerce, as set forth in *Mattresses from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,928 (Mar. 25, 2021), is unsupported by substantial evidence on the administrative record and otherwise not in accordance with law, and that the Court therefore remand this final determination to Commerce for disposition in a manner consistent with the judgment of the Court.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn
CASSIDY LEVY KENT (USA)
LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel for Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett & Platt, Incorporated; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO*

Date:    December 17, 2021

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| BROOKLYN BEDDING, LLC ET AL., | ) |
|  | ) |
| *Plaintiffs*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES, | ) Court. No. 21-00285 |
|  | ) |
| *Defendant*, | ) **NON-CONFIDENTIAL VERSION** |
|  | ) |
| and | ) Business Proprietary Information Removed from Brackets on Pages 6-8, 11, 18, 20-21, 27, 31, and 37. |
| SAFFRON LIVING CO., LTD. | ) |
|  | ) |
| *Defendant-Intervenor*. | ) |
|  | ) |

## BRIEF OF PLAINTIFFS BROOKLYN BEDDING, LLC ET AL., IN SUPPORT OF THEIR RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD

Yohai Baisburd
Chase J. Dunn
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to Mattress Petitioners*

Date:       December 17, 2021

NON-CONFIDENTIAL VERSION

# Table of Contents

Page

I.  STATEMENT PURSUANT TO RULE 56.2 ................................................2

    A. Administrative Determination Under Review ................................. 2

    B. Issues Presented for Review ................................................... 3

II. STATEMENT OF THE FACTS ................................................... 4

III. SUMMARY OF THE ARGUMENT ............................................. 13

IV. ARGUMENT ........................................................................ 15

    A. Standard of Review ............................................................ 15

    B. Commerce Acted Unlawfully by Failing to Verify Saffron's
        Data Before Such Data Were Used in the Final Dumping
        Calculation ....................................................................... 18

    C. Commerce Failed to Follow its Longstanding Policy of
        Applying the Transactions Disregarded and Major Input
        Rules When a Respondent Has a Meaningful Number of
        Affiliated Party Transactions ............................................... 21

        1. Commerce Has a Longstanding Practice of Applying
           the Transactions Disregarded and Major Input
           Rules To Address Substantial Affiliated Party
           Transactions .................................................................. 22

        2. Commerce Failed to Follow Its Longstanding
           Practice by Refusing to Conduct Transactions
           Disregarded and Major Input Analyses in the Final
           Determination ................................................................ 26

    D. Commerce's Decision to Reverse its *Preliminary
        Determination* Without Providing a Post-Preliminary
        Determination and Opportunity for All Parties to Comment
        Warrants Remand .............................................................. 31

**NON-CONFIDENTIAL VERSION**

V.  CONCLUSION ................................................................................................38

NON-CONFIDENTIAL VERSION

## Table of Authorities

Page(s)

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ......................................................................... 15

19 U.S.C. § 1675(a)(2)(B)(iv) ..................................................................... 32

19 U.S.C. § 1677b(f)(2) ........................................................................ *passim*

19 U.S.C. § 1677b(f)(3) ........................................................................ *passim*

19 U.S.C. § 1677e .......................................................................................... 8

19 U.S.C. § 1677e(a) ................................................................................... 18

19 U.S.C. § 1677m(g) ................................................................................. 34

19 U.S.C. § 1677m(i)(1) ...................................................................... *passim*


**Regulations**

19 C.F.R. § 351.307(b)(1)(i) ................................................................. 19, 20


**Court Decisions**

*Amerijet Int'l, Inc., v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ......................................................................................................... 29

*Barnhard v. United States Treasury Dep't*, 588 F. Supp. 1432 (Ct. Int'l Trade 1984) ............................................................. 33

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*, 222 F. Supp. 3d 1255 (Ct. Int'l Trade 2017) ......................................................................................................... 29

*Chevron, USA., Inc. v. Natural Res. Def Council, Inc.*, 467 U.S. 837 (1984) .............................................................. 13, 16, 18, 19

**NON-CONFIDENTIAL VERSION**

*Consol. Edison Corp. v. NLRB*, 305 U.S. 197 (1938) .............................. 15

*Fine Furniture (Shanghai) Ltd. v. United States*, 865
F. Supp. 2d 1254 (Ct. Int'l Trade 2012) .............................................. 35, 36

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034 (Fed.
Cir. 1996) ............................................................................................ 15

*Huvis Corp. v. United States*, 31 C.I.T. 1803 (2007) ............................... 28

*Huvis Corp. v. United States*, 525 F. Supp. 2d 1370
(Ct. Int'l Trade 2007) ................................................................. 17, 18, 30

*Huzhou Muyun Wood Co. v. United States*, 279 F.
Supp. 3d 1215 (Ct. Int'l Trade 2017) ....................................................... 33

*INS v. Yang*, 519 U.S. 26 (1996) ............................................................. 18

*JBF RAK LLC v. United States*, 991 F. Supp. 2d 1343
(Ct. Int'l Trade 2014) .................................................................... 32, 33

*Koyo Seiko Co. v. United States*, 36 F.3d 1565 (Fed.
Cir. 1994) ............................................................................................ 33

*Lifestyle Enter. v. United States*, 768 F. Supp. 2d 1286
(Ct. Int'l Trade 2011) ........................................................................... 36

*LTV Steel Co. v. United States*, 985 F. Supp. 95 (Ct.
Int'l Trade 1997) ................................................................................. 37

*Magnesium Corp. of Am. v. United States*, 166 F.3d
1364 (Fed. Cir. 1999) ........................................................................... 28

*Matsushita Elec. Indus. Co. Ltd. v. United States*, 750
F.2d 927 (Fed. Cir. 1984) ....................................................................... 16

*Mid Continent nail Corp. v. United States*, 712 F.
Supp. 2d 1370 (Ct. Int'l Trade 2010) ....................................................... 33

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State
Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) .................................... 16, 17

*New Am. Keg v. United States*, Slip Op. 2021-30 (Mar. 23, 2021) ................................................................ 19

*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371 (Fed. Cir. 2007) ........................................ 17

*Phillip Bros., Inc. v. United States*, 630 F. Supp. 1317 (Ct. Int'l Trade 1986) ............................................ 37

*Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009) ........................ 36

*Royal Thai Gov't v. United States*, 441 F. Supp. 2d 1350 (Ct. Int'l Trade 2006) ...................................... 19

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ........................................... 29

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ........................................................ 29

*Sucocitrico Cutrale Ltda. v. United States*, 36 C.I.T. 821 (2012) ....................................................... 23

*Tianjin Magnesium Int'l Co. v. United States,* 722 F. Supp. 2d 1322 (Ct. Int'l Trade 2010) ................. 16

*United States Steel Corp. v. United States*, 35 C.I.T. 209 (2011) ...................................................... 29

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) ............................... 15

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ................................................................ 15

*Vin Hoan Corp. v. United States*, 49 F. Supp. 3d 1285 (Ct. Int'l Trade 2015) ............................................ 35

NON-CONFIDENTIAL VERSION

## Administrative Determinations

*Certain Cold-Rolled Steel Flat Products from Brazil:*
*Final Determination of Sales at Less Than Fair*
*Value*, 81 Fed. Reg. 49,946 (July 29, 2016) ............................................ 23

*Chlorinated Isocyanurates from Spain: Final Results*
*of Antidumping Duty Administrative Review*, 73 Fed.
Reg. 79,789 (Dec. 30, 2008) ............................................................ 24, 25

*Mattresses from Cambodia: Final Affirmative*
*Determination of Sales at Less Than Fair Value and*
*Final Negative Determination of Critical*
*Circumstances*, 86 Fed. Reg. 15,894 (Mar. 25, 2021) ............................ 25

*Mattresses from Cambodia, Indonesia, Malaysia,*
*Serbia, Thailand, the Republic of Turkey, and the*
*Socialist Republic of Vietnam: Antidumping Duty*
*Orders and Amended Final Affirmative Antidumping*
*Determination for Cambodia*, 86 Fed. Reg. 26,460
(May 14, 2021) .......................................................................................... 3

*Mattresses from Cambodia, Indonesia, Malaysia,*
*Serbia, Thailand, the Republic of Turkey, and the*
*Socialist Republic of Vietnam: Initiation of Less-*
*Than-Fair-Value Investigations*, 85 Fed. Reg. 23,002
(Apr. 24, 2020) ..................................................................................... 4, 5

*Mattresses from Indonesia: Final Affirmative*
*Determination of Sales at Less Than Fair Value*, 86
Fed. Reg. 15,899 (Mar. 25, 2021) ........................................................ 25

*Mattresses from Serbia: Final Affirmative*
*Determination of Sales at Less Than Fair Value, and*
*Final Negative Finding of Critical Circumstances*, 86
Fed. Reg. 15,892 (Mar. 25, 2021) .................................................... 25, 26

*Mattresses from Thailand: Final Affirmative*
*Determination of Sales at Less Than Fair Value*, 86
Fed. Reg. 15,928 (Mar. 25, 2021) ................................................. *passim*

NON-CONFIDENTIAL VERSION

*Mattresses from Thailand: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 69,568 (Nov. 3, 2020) ............................................................................ *passim*

*Notice of Final Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod From Canada*, 67 Fed. Reg. 55,782 (Aug. 30, 2002) ............................... 24

*Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Round Wire from Canada*, 64 Fed. Reg. 17,324 (Apr. 9, 1999) .................................................... 22, 23

*Notice of Final Results of the Ninth Administrative Review of the Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7,011 (Feb. 14, 2007) ........................ 23, 24

*Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 Fed. Reg. 29,700 (May 21, 2013) ................................................ 34

*Stainless Steel Sheet and Strip in Coils from Mexico: Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 7,710 (Feb. 11, 2008) ............................................ 22

*Sugar from Mexico: Final Determination of Sales at Less Than Fair Value*, 80 Fed. Reg. 57,341 (Sept. 23, 2015) ...................................................................................... 25

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

|  |  |  |
|---|---|---|
| BROOKLYN BEDDING, LLC ET AL., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court. No. 21-00285 |
| | ) | |
| *Defendant,* | ) | **NON-CONFIDENTIAL VERSION** |
| | ) | Business Proprietary Information Removed from Brackets on Pages 6-8, 11, 18, 20-21, 27, 31, and 37. |
| and | ) | |
| | ) | |
| SAFFRON LIVING CO., LTD. | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS OF LAW AND FACT
IN SUPPORT OF THEIR RULE 56.2 MOTION FOR JUDGEMENT
ON THE AGENCY RECORD**

Plaintiffs respectfully submit this memorandum of points of law and fact in support of their motion for judgment on the agency record filed by Plaintiffs pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("CIT"). Plaintiffs contend that the U.S. Department of Commerce's ("Commerce") apparently last minute decision to abandon its preliminary determination to apply total

NON-CONFIDENTIAL VERSION

adverse facts available ("AFA") to the sole respondent and calculate a dumping margin using the costs and prices reported by the respondent was unlawful because Commerce: (1) failed to conduct verification of the factual information it relied upon in the *Final Determination*, as is statutorily required in an antidumping duty investigation; (2) failed to follow its longstanding practice of evaluating affiliated party transactions under the transactions disregarded and major input rules; and (3) did not issue a post-preliminary determination and provide parties an opportunity to comment on its final dumping calculations.

These critical errors render Commerce's *Final Determination* unsupported by substantial evidence and not in accordance with law. Accordingly, Plaintiffs respectfully request that the Court remand the *Final Determination* to Commerce with instructions to address these errors, consistent with the discussion below.

## I.   STATEMENT PURSUANT TO RULE 56.2

### A. Administrative Determination Under Review

Plaintiffs are domestic producers of mattresses and have brought this action to challenge the final determination of Commerce's antidumping duty ("AD") investigation of Mattresses from Thailand.

NON-CONFIDENTIAL VERSION

*See Mattresses from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,928 (Mar. 25, 2021), Appx1508-1510, and accompanying Issues and Decision Memorandum, Appx1459-1475; *see also Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia*, 86 Fed. Reg. 26,460 (May 14, 2021), Appx1529-1532.[1]

## B. Issues Presented for Review

1. Pursuant to 19 U.S.C. § 1677m(i)(1), Commerce "shall verify all information relied upon in making a final determination in an investigation." Insofar as Commerce relied on Saffron's reported costs and prices in calculating a dumping margin in the *Final Determination* but did not conduct verification of that information, did Commerce act contrary to law?

2. Saffron reported a meaningful number of affiliated party transactions during the period of investigation. Commerce's

---

[1] All citations to the administrative record take the form Appx___ in accordance with ECF No. 17.

NON-CONFIDENTIAL VERSION

longstanding practice is to evaluate affiliated party transactions under the transactions disregarded rule (19 U.S.C. § 1677b(f)(2)) and/or the major input rule (19 U.S.C. § 1677b(f)(3)) to ensure they reflect market values. Insofar as Commerce has this practice, was Commerce's failure to apply the transactions disregarded and major input rules in the *Final Determination* an unreasonable departure from past practice and contrary to law?

3. Commerce reversed its preliminary AFA finding and calculated a dumping margin based on Saffron's reported costs and prices in the *Final Determination*. The antidumping statute and Commerce's regulations require Commerce to provide the parties an opportunity to comment on Commerce's dumping calculations. Did Commerce act contrary to law by not issuing a post-preliminary determination and providing all parties an opportunity to comment on its final dumping calculations?

## II.   STATEMENT OF THE FACTS

Commerce initiated an antidumping duty investigation of mattresses from Thailand on April 24, 2020. *See Mattresses from*

NON-CONFIDENTIAL VERSION

*Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 23,002 (Apr. 24, 2020) Appx6659-6666. Commerce selected Nisco (Thailand) Co., Ltd. ("Nisco") and Saffron Living Co., Ltd. ("Saffron"), the largest exporters by volume of mattresses in Thailand, as the mandatory respondents in the investigation. *See Mattresses from Thailand: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 69,568 (Nov. 3, 2020), Appx1045-1048, and accompanying Decision Memorandum at Appx1002. Shortly after receiving the initial questionnaire Nisco informed Commerce that it would not participate in the investigation, leaving Saffron as the sole respondent in the investigation. *See id.*

In its initial Section A questionnaire response, Saffron reported that it is "100% owned by Xilinmen Furniture Co., Ltd. ("Xilinmen")," a Chinese company. Letter from Saffron, "Response to Section A of the Department's Antidumping Questionnaire" (June 11, 2020), Appx2751. Xilinmen "maintain{ed} an international business team at its factory in

NON-CONFIDENTIAL VERSION

China that receives orders from U.S. customers and transmits those orders to Saffron" in Thailand. Appx2749. Saffron also "purchase{d} part of certain raw materials (for example, mattress covers, fabric, and other materials used in the production of mattresses) from two affiliated companies, Xilinmen and WeiKen Trading Co., Ltd. ("Weiken")" and confirmed that these materials "are used as inputs in Saffron's production facilities in Thailand." Appx2752. In comments filed in advance of the *Preliminary Determination*, Mattress Petitioners urged Commerce to follow its longstanding practice and evaluate these affiliated-party transactions, which comprised [      ] percent of Saffron's total cost of manufacture ("TOTCOM"), by utilizing the "transactions disregarded" and "major input" rules. *See* Letter from Mattress Petitioners, "Petitioners' Comments Concerning the Preliminary Determination" (Oct. 2, 2020), Appx6414-6417.

Saffron also disclosed in its Section A questionnaire response that it "sold a limited quantity of mattresses, [

        ]" and stated that sales "of this merchandise {could} be identified in Saffron's system by the customer code and by the product code."

NON-CONFIDENTIAL VERSION

Appx2748. In a supplemental Section A questionnaire, Saffron changed

its story. Saffron updated its count of the total number of mattresses it

sold to [                    ] that were [

                                          ]. *See* Letter from Saffron,

"Response to the Department's Section A Supplemental Questionnaire"

("July 23, 2020), Appx4251-4253. Saffron further admitted "that once it

received the mattresses produced by [          ], Saffron [

                            ] the mattresses to its U.S.

customers." *See* Commerce Memorandum, "Preliminary Application of

Adverse Facts Available to Saffron Living Co., Ltd." (Oct. 27, 2020) at

Appx1013-1014. Saffron's "administrative personnel recorded these

mattresses as [      ] origin." Appx1014. Furthermore, "Saffron's

commercial invoices for these mattresses…label [

                                          ]." *Id.* Importantly,

"Saffron stated that it [

                                          ]." *Id.* Put

simply, "Saffron misrepresented the facts about the [

                    ] mattresses it sold to the [                    ] during the POI

7

**NON-CONFIDENTIAL VERSION**

and [                                   ] produced mattresses." *Id.*

Moreover, "the [     ] mattresses were sold in the [                ] months

of 2019 after [            ] received its preliminary [

] and its final [

].” *Id.*

In the *Preliminary Determination*, Commerce found "Saffron

significantly impeded th{e} investigation by selling [                ]

mattresses as [       ]-produced mattresses" in order to avoid [

]. Appx1015. Consequently, "record evidence

calls into question the validity and credibility of all of Saffron's

submitted information" and Commerce could not with certainty

"determine what other information Saffron provided in its

questionnaire responses that might be misrepresented." Appx1015-

1016. Accordingly, Commerce did "not have a reliable basis for

calculating an accurate dumping margin" using Saffron's reported costs

and prices. Appx1016. Therefore, given the clear evidence of

[                ], Commerce applied total AFA pursuant 19 U.S.C. §

1677e and assigned the highest dumping margin alleged in the petition

**NON-CONFIDENTIAL VERSION**

to Saffron, or 763.28 percent. *Id.* Because Commerce relied on total

AFA, rather than on Saffron's reported costs and prices, in calculating a

dumping margin it did not conduct verification pursuant to 19 U.S.C. §

1677m(i).

In the *Preliminary Determination*, Commerce established case

and rebuttal brief deadlines of November 24, 2020, and December 1,

2020, respectively. Appx1047. Saffron did not file a case brief. Instead,

Saffron sought to subvert Commerce's standard briefing process by

requesting a phone call with the Assistant Secretary "to discuss the

Department's preliminary determination with respect to Saffron, and to

explain why this decision was not justified by the facts of the case or by

Department or judicial precedent." Letter from Saffron, "Request for

Meeting Regarding Preliminary Determination" (Nov. 24, 2020),

Appx6558-6559. Mattress Petitioners objected to Saffron's request,

explaining that this was inconsistent with Commerce's regulations and

risked prejudicing petitioners who would not have an opportunity to

hear all arguments made during the call or an opportunity to rebut

such arguments. *See* Letter from Mattress Petitioners, "Mattress

Petitioners' Response to Saffron's Letter in Lieu of a Case Brief" (Dec. 1,

**NON-CONFIDENTIAL VERSION**

2020), Appx6567-6578.

On December 3, 2020, Commerce held a conference call with Saffron's counsel to discuss the *Preliminary Determination. See* Commerce Memorandum, "Telephone Conversation With Counsel to Saffron Living Co., Ltd. Regarding the Antidumping Duty Preliminary Determination on Mattresses from Thailand" (Dec. 4, 2020), Appx8268-8269. Commerce held another conference call with Saffron's counsel on the same day in which Saffron's counsel "requested that Commerce issue a questionnaire in lieu of verification." Commerce Memorandum, "Teleconference with Counsel for Saffron Living Co., Ltd." (Dec. 10, 2020), Appx8299. On December 16, 2020, Commerce held a teleconference with counsel to Mattress Petitioners, in which petitioners asked Commerce not to issue a questionnaire in lieu of verification and continue to apply AFA in the *Final Determination. See* Commerce Memorandum, "Teleconference with Counsel for Petitioners in Commerce's AD Investigations of Mattresses from Thailand" (Dec. 22, 2020), Appx8300.

Commerce issued its *Final Determination* on March 25, 2021. Appx1508-1510. In the *Final Determination*, Commerce reversed its

10

NON-CONFIDENTIAL VERSION

total AFA finding for Saffron and "calculated a weighted-average dumping margin for Saffron and applied partial adverse facts available (AFA) to certain mattresses sold by Saffron." Appx1459. Specifically, Commerce "calculated Saffron's dumping margin based on partial AFA, by calculating a weighted average of the AFA rate applied only to the [          ] mattresses, and Saffron's dumping margin calculated for its sales of mattresses manufactured in Thailand, using Commerce's normal methodology." Commerce Memorandum, "Final Determination Analysis Memorandum for Saffron Living Co., Ltd. (Mar. 18, 2021), Appx1057.

Although Commerce stated it calculated Saffron's dumping margin using "its normal methodology," Plaintiffs filed a ministerial error allegation arguing that Commerce "overlooked a key aspect of its 'normal methodology' for calculating a dumping margin" insofar as "Saffron reported that [          ] of its major inputs were sourced from affiliated parties but the Department did not conduct any analysis of the arm's-length nature of these transactions and did not conduct a major input analysis." *See* Letter from Mattress Petitioner, "Mattress Petitioners' Ministerial Error Comments" (Mar. 29, 2021), Appx6583.

NON-CONFIDENTIAL VERSION

Commerce rejected Mattress Petitioners allegation, explaining the
"alleged 'ministerial error' was a methodological choice made by
Commerce. Specifically, for the final determination of *Mattresses from
Thailand*, we decided not to make any adjustments (*i.e.*, transactions
disregarded or major input rule adjustments) for affiliated party
transactions." *See* Commerce Memorandum, "Allegation of a Ministerial
Error in the Final Determination" (Apr. 23, 2021), Appx1516-1517.
Commerce provided no analysis as to why it was departing from its
longstanding practice of evaluating affiliated party transactions under
the transactions disregarded and major input rules. Instead, Commerce
cited a final cost memo "showing that Commerce relied on Saffron's
costs as reported except for a change in CV profit." Appx1517 (citing
Commerce Memorandum, "Cost of Production and Constructed Value
Calculation Adjustments for the Final Determination – Saffron Living
Co., Ltd." (Mar. 18, 2021), Appx1053-1054). That Commerce relied on
Saffron's costs as reported was not in dispute. Rather, Mattress
Petitioners argued Commerce's overlooked the fact that Saffron
reported substantial affiliated party transactions and had departed
from its longstanding practice in investigations of applying the

12

transactions disregarded and major input rules to evaluate the arm's length nature of such transactions. Commerce failed to address this argument, provided no reasoning for its departure from longstanding practice, and therefore Saffron's substantial affiliated party transactions were accepted at face value. On May 14, 2021, Commerce published the antidumping duty order on mattresses from Thailand. Appx1529-1532.

## III.   SUMMARY OF THE ARGUMENT

Commerce's decision to abandon its preliminary total AFA determination and calculate a dumping margin for Saffron in the *Final Determination* was unsupported by substantial evidence and otherwise not in accordance with law for three reasons.

*First*, under *Chevron* step one, Commerce did not have a legal basis to forego conducting a verification of Saffron's data before using those data in the *Final Determination*. The statute and Commerce's regulations are clear—Commerce must conduct verification in an investigation. Having failed to conduct verification, this Court should remand the *Final Determination* to Commerce to conduct a verification in accordance with the statute's mandate and Commerce's regulations.

**NON-CONFIDENTIAL VERSION**

*Second*, Commerce failed to follow its longstanding practice of evaluating affiliated party transactions under either the transactions disregarded (19 U.S.C. § 1677b(f)(2)) or major input (19 U.S.C. § 1677b(f)(3)) rules. Commerce admits to having a practice of evaluating affiliated party transactions under both rules, and this practice is evidenced by the fact that Commerce applied both rules, as appropriate, in the three companion antidumping investigations concerning imports of mattresses from Cambodia, Indonesia, and Serbia. Commerce's application of this practice in the companion mattress cases demonstrates further that Commerce's refusal to conduct an analysis of Saffron's affiliated purchases was arbitrary and renders the *Final Determination* unsupported by substantial evidence and not in accordance with law.

*Third*, Commerce failed to follow its longstanding practice of publishing a post-preliminary determination and providing the parties an opportunity to comment on changes to any preliminary determination that will impact the final dumping calculation. Here, Commerce reversed its preliminary total AFA determination in the *Final Determination* and calculated a dumping margin based on

14

NON-CONFIDENTIAL VERSION

Saffron's reported cost and price data but failed to provide Plaintiffs with an opportunity to comment on those calculations. Commerce's failure to provide Plaintiffs with an opportunity to comment on Commerce's dumping calculation renders the *Final Determination* unsupported by substantial evidence and not in accordance with law.

## IV.   ARGUMENT

### A. Standard of Review

In appeals of antidumping duty determinations, the Court will hold Commerce's determination unlawful if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009); *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996).

To determine whether Commerce's decision is supported by substantial evidence, the Court examines whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Corp. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla"

NON-CONFIDENTIAL VERSION

and "must take into account whatever in the record fairly detracts from its weight." *Id*. at 477, 488.  The substantial evidence standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States,* 722 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2010) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).  In sum, substantial evidence review requires the Court to determine whether the evidence and reasonable, evidence-based inferences support Commerce's findings.  *See Matsushita Elec. Indus. Co. Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

Commerce acts contrary to law where, as here, it acts arbitrarily or based on an impermissible interpretation of its statutory authority. *See Chevron, USA., Inc. v. Natural Res. Def Council, Inc*., 467 U.S. 837, 842-43 (1984). When reviewing Commerce's interpretation of the antidumping statute, the Court first determines "whether Congress has directly spoken on the precise question at issue. Where the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent

16

NON-CONFIDENTIAL VERSION

of Congress." *Id.* Where, on the other hand, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Furthermore, in examining an agency's decision to depart from its established practice, a reviewing Court examines whether the agency provided a reasoned basis for doing so. "When an agency decides to change course…it must adequately explain the reason for a reversal of policy." *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1378 n.5 (Fed. Cir. 2007); *see also Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 57 (1983) ("an agency changing its course must supply a reasoned analysis") (internal quotation and citation omitted). Moreover, "{t}hough the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, {or} an abuse of discretion…'" *Huvis Corp. v.*

17

NON-CONFIDENTIAL VERSION

*United States*, 525 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2007)

(quoting *INS v. Yang*, 519 U.S. 26, 32 (1996)) (emphasis added).

### B. Commerce Acted Unlawfully by Failing to Verify Saffron's Data Before Such Data Were Used in the Final Dumping Calculation

The antidumping statute unambiguously requires that Commerce "shall verify all information relied upon in making a final determination in an investigation," 19 U.S.C. § 1677m(i)(1), and prohibits Commerce from relying on unverified information, 19 U.S.C. § 1677e(a). Commerce plainly admits that it relied on Saffron's unverified reported cost and price data in the *Final Determination*. Appx1465, Appx1474. This renders Commerce's *Final Determination* unlawful under the first prong of *Chevron* scrutiny, which requires Commerce, and this Court, to "give effect to the unambiguous expressed intent of Congress." *Chevron*, 467 U.S. at 842-843. Commerce's failure to conduct verification is especially egregious here given Saffron's admitted [

]. Accordingly, Plaintiffs hereby request that this Court remand the challenged determination to Commerce with instructions for Commerce to verify the factual information it relied upon in the *Final Determination*, as is required by law.

NON-CONFIDENTIAL VERSION

A "critical aspect of Commerce's antidumping investigation involves 'verification' of mandatory respondents." *New Am. Keg v. United States*, Slip Op. 2021-30 at *5 (Mar. 23, 2021). As noted, the statute provides that Commerce "<u>shall</u> verify all information relied upon in making…a final determination in an investigation." 19 U.S.C. § 1677m(i)(1) (emphasis supplied). Given clear Congressional instruction, Commerce promulgated 19 C.F.R. § 351.307(b)(1)(i), which states that "the Secretary *will* verify factual information upon which the Secretary relies in…{an} antidumping investigation." (emphasis supplied). As the "intent of Congress {was} clear" to Commerce, under the first step of *Chevron* that is "the end of the matter." *Chevron*, 467 U.S. at 842. Indeed, this Court has construed this statutory requirement as preventing Commerce from considering any information received after verification in an investigation unless it "corroborates, reinforces, explains, or expands on already verified questionnaire responses or other data." *Royal Thai Gov't v. United States*, 441 F. Supp. 2d 1350, n.9 (Ct. Int'l Trade 2006).

In the *Preliminary Determination*, Commerce calculated a dumping margin using total AFA as a consequence of Saffron's

NON-CONFIDENTIAL VERSION

[                          ]. Appx1472. Because Saffron's preliminary margin was based on total AFA, Commerce acknowledges that it "did not conduct verification under section 782(i) of the Tariff Act of 1930." *Id.* In the *Final Determination*, Commerce reversed course and "calculated a weighted-average dumping margin for Saffron." Appx1461. In calculating normal value, here based on constructed value, Commerce "relied on the {cost of production} and {constructed value} data submitted by Saffron." Appx1467. On the other side of the dumping calculation, Commerce calculated U.S. price "based on the packed prices that Saffron charged to the first unaffiliated purchaser in the United States." Appx1465.

In sum, the record unambiguously demonstrates that Commerce relied on Saffron's reported costs and prices when calculating both normal value and U.S. price but failed to verify this information. Commerce's failure to conduct verification is in clear violation of the statutory requirement that Commerce "shall verify all information relied upon in making a final determination in an investigation," 19 U.S.C. § 1677m(i)(1), as well as Commerce's regulations, 19 C.F.R. § 351.307(b)(1)(i). Accordingly, Commerce's *Final Determination* is not in

accordance with law and should be remanded to Commerce with instructions to verify the information it relied upon in calculating Saffron's final dumping margin.

### C. Commerce Failed to Follow its Longstanding Policy of Applying the Transactions Disregarded and Major Input Rules When a Respondent Has a Meaningful Number of Affiliated Party Transactions

Congress provided Commerce with two statutory tools to address affiliated party transactions when calculating a dumping margin: the "transactions disregarded" and "major input" rules. *See* 19 U.S.C. §§ 1677b(f)(2), (3). In Section IV.C.1, Plaintiffs demonstrate that Commerce has developed a decades-long practice of applying both rules, as appropriate, when a respondent has significant affiliated party transactions. This is confirmed by Commerce's application of both rules in the companion antidumping investigations concerning imports of mattresses from Cambodia, Indonesia, and Serbia, which were filed concurrently with the investigation subject to this appeal. In Section IV.C.2, we demonstrate that Saffron had significant affiliated party transactions, amounting to [    ] percent of its TOTCOM. In the *Final Determination*, however, Commerce did not account for these affiliated party transactions insofar as it refused to apply either the transactions

21

disregarded or major input rules. Commerce did not explain why it was departing from its longstanding practice, nor did it explain why it was appropriate to apply both rules in the companion mattress investigations but not in the investigation subject to this appeal. Consequently, Commerce's *Final Determination* is unsupported by substantial evidence and otherwise not in accordance with law.

### 1. Commerce Has a Longstanding Practice of Applying the Transactions Disregarded and Major Input Rules To Address Substantial Affiliated Party Transactions

In calculating normal value, the antidumping statute provides two mechanisms through which Commerce may analyze transactions between a respondent and an affiliate: the "transactions disregarded" (19 U.S.C. § 1677b(f)(2)) and the "major input" (19 U.S.C. § 1677b(f)(3)) rules. The purpose of these rules "is to ensure that transactions between affiliates reflect arm's length transactions and that those transactions are at prices above the affiliated suppliers' cost of production." *Stainless Steel Sheet and Strip in Coils from Mexico: Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 7,710 (Feb. 11, 2008), IDM at Comment 7; *see also Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Round*

*Wire from Canada*, 64 Fed. Reg. 17,324 (Apr. 9, 1999), IDM at Comment 18 (noting that the "intent of {these} section{s} and the related regulations is to account for the possibility of shifting costs to an affiliated party"). In other words, under both rules, "the statute directs the Department to test the arm's-length nature of affiliated transactions to determine whether they reflect a market value." *Certain Cold-Rolled Steel Flat Products from Brazil: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 49,946 (July 29, 2016), IDM at Comment 10.

This Court has previously recognized that in "calculating a respondent's cost of production, *Commerce's long-standing practice is to determine whether inputs received from affiliated parties have been acquired for less than the value of those same inputs received from unaffiliated parties.*" *Sucocitrico Cutrale Ltda. v. United States*, 36 C.I.T. 821, 830 (2012) (emphasis supplied). Commerce applies both the transactions disregarded and major input rules because they are critical to establishing accurate dumping margins. *See Notice of Final Results of the Ninth Administrative Review of the Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7,011 (Feb. 14, 2007), IDM at

**NON-CONFIDENTIAL VERSION**

Comment 6 ("the Department's adjustment to affiliated transactions to reflect market prices was reasonable and resulted in a more accurate dumping margin calculation."). Commerce's practice of applying both the transactions disregarded and major input rules, as appropriate, in antidumping duty investigations is well established. *See, e.g., Notice of Final Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod From Canada*, 67 Fed. Reg. 55,782 (Aug. 30, 2002), IDM at Comment 23 (noting that it "is the Department's practice not to apply section 773(f)(2) and (3) of the Act to transfers within a collapsed entity…*{but} the Department does apply the major input or transaction disregarded rule to transfers from non-collapsed entities*") (emphasis supplied); *Notice of Final Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod from Canada*, 67 Fed. Reg. 55,782 (Aug. 30, 2002), IDM at Comment 23 (noting it is "the Department's practice not to apply section 773(f)(2) and (3) of the Act to transfers within a collapsed entity, *the exception to the rules*, since we are treating the collapsed companies as one single entity") (emphasis supplied); *Chlorinated Isocyanurates from Spain: Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg.

24

NON-CONFIDENTIAL VERSION

79,789 (Dec. 30, 2008), IDM at (outlining Commerce's interpretation of the transactions disregarded and major input rules and explaining that "{s}ince the implementation of the Uruguay Round Agreements Act, the Department has applied this interpretation consistently"); *Sugar from Mexico: Final Determination of Sales at Less Than Fair Value*, 80 Fed. Reg. 57,341 (Sept. 23, 2015), IDM at Comment 13 (noting Commerce applies the transactions disregarded rule to a respondent's purchase of services from an affiliate as well as goods).

Following this longstanding practice, Commerce evaluated affiliated party transactions under the transactions disregarded and/or major input rules in three of the companion antidumping cases concerning imports of mattresses from Cambodia, Indonesia, and Serbia. *See Mattresses from Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 86 Fed. Reg. 15,894 (Mar. 25, 2021), IDM at Comment 1; *Mattresses from Indonesia: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,899 (Mar. 25, 2021), IDM at Comment 3; *Mattresses from Serbia: Final Affirmative Determination of Sales at Less Than Fair Value, and Final*

NON-CONFIDENTIAL VERSION

*Negative Finding of Critical Circumstances*, 86 Fed. Reg. 15,892 (Mar. 25, 2021), IDM at Comment 1.

### 2. Commerce Failed to Follow Its Longstanding Practice by Refusing to Conduct Transactions Disregarded and Major Input Analyses in the Final Determination

Notwithstanding the decades-old practice outlined above, and Commerce's application of both the transactions disregarded and major input rules in three of the companion mattresses antidumping investigations, Commerce ignored record evidence of Saffron's substantial affiliated party transactions in this case when calculating a final dumping margin and refused to apply either the transactions disregarded or major input rules. Indeed, neither the transactions disregarded nor the major input rule are mentioned in Commerce's final IDM. *See* Appx1459-1475. In response to a ministerial error allegation by Plaintiffs, Commerce plainly admitted that it "decided not to make any adjustments (*i.e.*, transactions disregarded or major input rule adjustments) for affiliated party transactions" but provided no explanation as to why it declined to apply such adjustments and why it was departing from longstanding practice. Appx1516-1517. Consequently, Commerce's *Final Determination* is unsupported by

**NON-CONFIDENTIAL VERSION**

substantial evidence and not in accordance with law, and this Court should remand this case to Commerce with instructions to apply the transactions disregarded and major input rules.

Saffron reported that it is "100% owned by Xilinmen Furniture Co., Ltd. ("Xilinmen")," a Chinese company. Appx2751. Saffron also reported that it "purchases part of certain raw materials (for example, mattress covers, fabric, and other materials used in the production of mattresses) from two affiliated companies, Xilinmen and" WeiKen. Appx2752. Mattress Petitioners noted in comments filed in advance of the *Preliminary Determination* that "{t}hese purchases comprise [     ] percent of its TOTCOM" and further explained that the statute delineates special rules for the calculation of respondents' costs when major inputs are sourced from affiliated parties. Appx6415 (citing Letter from Saffron, "Response to the Department's Supplemental Section D Questionnaire" (Sept. 22, 2020) at Exhibit D-8). Specifically, under the "transactions disregarded rule," the Department may disregard a transfer price where it "does not fairly reflect the amount usually reflected in sales of merchandise under consideration in the market under consideration." 19 U.S.C. § 1677b(f)(2). Similarly, under

27

NON-CONFIDENTIAL VERSION

the "major input rule," if the Department has "reasonable grounds to
believe or suspect that an amount represented as the value of such
input is less than the cost of production of such input, then
the administering authority may determine the value of the major input
on the basis of the information available regarding such cost of
production." 19 U.S.C. § 1677b(f)(3). Here, Commerce had "reasonable
grounds to believe or suspect" that the affiliated transactions do not
reflect the actual cost of production because the major inputs were
sourced from affiliates in China, a non-market economy. *See*
*Magnesium Corp. of Am. v. United States*, 166 F.3d 1364, 1370 (Fed.
Cir. 1999) ("By definition, in a non-market economy, the price of
merchandise does not reflect its fair value because the market does not
operate on market principles."). In its final dumping calculation,
however, Commerce failed to account for these related party
transactions.

This Court has previously explained that Commerce "is required
to explain *why* it is changing course, not merely *that* it is changing
course." *Huvis Corp. v. United States*, 31 C.I.T. 1803, 1813 (2007).
Indeed, a "fundamental requirement of administrative law is that an

28

NON-CONFIDENTIAL VERSION

agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*, 222 F. Supp. 3d 1255, 1268 (Ct. Int'l Trade 2017) (quoting *Amerijet Int'l, Inc., v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014)). Moreover, "conclusory statements will not do; an agency's statement must be one of *reasoning*." *Id.* Accordingly, "{a}n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

In this case, Commerce provided *no reasons* for refusing to evaluate Saffron's affiliated party transactions. *See* Appx1516-1517. Accordingly, the Court should remand this case for Commerce to explain its reasoning because this Court "must consider Commerce's decision based on the reasoning the Department put forth." *United States Steel Corp. v. United States*, 35 C.I.T. 209, 215 (2011) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment

NON-CONFIDENTIAL VERSION

which an administrative agency alone is authorized to make, must judge the proprietary of such action solely by the grounds invoked by the agency.")). That requirement, however, is not possible in this case because Commerce conducted no analysis and provided no reasoning for its decision to ignore Saffron's related party transactions and its longstanding practice of evaluating those transactions under the transactions disregarded and major input rules.

Moreover, the fact that Commerce has discretion to apply the transactions disregarded and major input rules does not absolve it of the obligation to follow longstanding practice. "Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule *or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, {or} an abuse of discretion…'" Huvis Corp. v. United States*, 525 F. Supp. 2d at 1377 (emphasis supplied). As discussed in Section IV.C.1, *supra*, Commerce's longstanding practice is to apply the transactions disregarded and major input rules when the record contains evidence of significant

30

**NON-CONFIDENTIAL VERSION**

transactions between a respondent and an affiliate. Here, the record unambiguously demonstrates that Saffron had significant purchases from affiliated parties. Consequently, Commerce's refusal to abide longstanding agency practice and evaluate those transactions under the transactions disregarded and major input rules is an arbitrary and irrational departure from that practice, especially considering Commerce followed this practice in the companion antidumping investigations concerning imports of mattresses from Cambodia, Indonesia, and Serbia. Moreover, Commerce's refusal to evaluate these affiliated transactions is all the more troublesome given the context of this case; namely, that Saffron admitted to engaging in

[                    ] by selling mattresses [

                                    ]. Accordingly, the Court

should remand to Commerce with instruction to evaluate Saffron's affiliated party transactions under the transactions disregarded and major input rules, as appropriate.

> **D. Commerce's Decision to Reverse its *Preliminary Determination* Without Providing a Post-Preliminary Determination and Opportunity for All Parties to Comment Warrants Remand**

Commerce's *volte-face* in the *Final Determination*, reversing its

**NON-CONFIDENTIAL VERSION**

preliminary total AFA determination and calculating a dumping margin based on Saffron's reported costs and prices without issuing a post-preliminary determination, denied Plaintiffs the opportunity to comment on its final dumping calculation. Commerce has previously recognized that a post-preliminary determination is appropriate when issues arise or information is submitted too late in a proceeding to be considered for the preliminary determination. Here, however, Commerce failed to provide notice of its intention to reverse its *Preliminary Determination* and denied Plaintiffs the opportunity to brief issues related to Commerce's dumping calculations. Commerce's failure to issue a post-preliminary determination, therefore, renders Commerce's *Final Determination* unsupported by substantial evidence and not in accordance with law, and merits remand for further consideration.

Although 19 U.S.C. § 1675(a)(2)(B)(iv) "establishes statutory deadlines for Commerce to publish its preliminary and final results…it does not prevent Commerce from fashioning procedures to properly administer the antidumping statute," including by publishing post-preliminary determinations. *JBF RAK LLC v. United States*, 991 F.

NON-CONFIDENTIAL VERSION

Supp. 2d 1343, 1352-1353 (Ct. Int'l Trade 2014). Moreover, the "absence

of a specific statutory obligation does not relieve the agency of its

general duty to execute its statutory mandates reasonably, *or to provide*

*interested parties a meaningful opportunity to comment.*" *Huzhou*

*Muyun Wood Co. v. United States*, 279 F. Supp. 3d 1215, 1225 (Ct. Int'l

Trade 2017) (citing *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1573

(Fed. Cir. 1994)) (emphasis supplied). Indeed, "{w}here a right to be

heard exists, due process requires that right be accommodated at a

meaningful time and in a meaningful manner." *Mid Continent nail*

*Corp. v. United States*, 712 F. Supp. 2d 1370, 1375 (Ct. Int'l Trade 2010)

(quoting *Barnhard v. United States Treasury Dep't*, 588 F. Supp. 1432,

1438 (Ct. Int'l Trade 1984)). This Court has further explained that

"Commerce is {} obligated to calculate antidumping duty margins as

accurately as possible" and providing "interested parties a meaningful

ability to comment on the information in the record…supports that

endeavor." *Huzhou Muyun Wood Co.*, 279 F. Supp. 3d at 1225. Given

these general principles, Commerce has previously recognized that

> Issuing a Post-Preliminary Analysis and providing all parties
> with an opportunity to comment on that analysis embodies
> the principles of transparency and openness underlying the
> Act and administrative law in general. For example, when

33

**NON-CONFIDENTIAL VERSION**

issues arise or information is submitted too late in a proceeding to be considered for the preliminary results, issuing a Post-Preliminary Analysis ensures that parties are aware of all issues before the Department releases final results and that they have an adequate opportunity to provide comments to the Department.

*Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 Fed. Reg. 29,700 (May 21, 2013), IDM at Comment 1.

This court has held that Commerce fails to provide adequate notice and opportunity to comment to a party when it conducts a calculation in a final determination that it did not conduct in the preliminary determination, thereby depriving the parties of an opportunity to comment. For example, in *Multilayered Wood Flooring from China*, Commerce included a Basic Electricity Tariff ("BET") in the calculation of benefit for a less than adequate remuneration ("LTAR") subsidy in the final determination but had not included it in the calculation of the LTAR subsidy in the preliminary determination. Plaintiffs asserted that Commerce's failure to include the BET in the preliminary subsidy calculation violated 19 U.S.C. § 1677m(g) because it did not provide adequate notice or an opportunity to comment on the inclusion of the BET in the subsidy calculation. This Court held that

NON-CONFIDENTIAL VERSION

"Commerce should have included the BET in the preliminary determination, thereby permitting Plaintiffs an opportunity to challenge that determination at the administrative level.  Commerce did not do this.  In this regard, the inclusion of the BET was procedurally defective." *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254, 1264 (Ct. Int'l Trade 2012).

Furthermore, in past cases where Commerce has adopted a methodology or calculation for the first time in a final determination and did not issue a post-preliminary determination, the agency has requested a voluntary remand to provide interested parties an opportunity to comment. For instance, in *Certain Frozen Fish Fillets from Vietnam*, Commerce used a "methodology to calculate {the respondent's} by-product for the first time in the *Final Results*." *Vin Hoan Corp. v. United States*, 49 F. Supp. 3d 1285, 1322 (Ct. Int'l Trade 2015). Commerce requested a voluntary remand because by adopting the methodology and calculation in the final results, Commerce "did not have 'the opportunity to consider {the parties'} arguments in the first instance' outside of the ministerial error context. Thus, if Defendant were to address the parties' arguments here, it would amount to

35

**NON-CONFIDENTIAL VERSION**

'impermissible post hoc rationalization.'" *Id.* The same logic applies here.

Finally, Commerce's failure to provide an opportunity for comment on agency action first made in a final determination prevents the parties from a full and fair opportunity to be heard and hinders "a plaintiff's opportunity to exhaust its administrative remedies." *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d at n. 14. As a result, a party "may seek judicial review of an issue that it did not brief at the administrative level if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level." *Lifestyle Enter. v. United States*, 768 F. Supp. 2d 1286, n. 17 (Ct. Int'l Trade 2011); *see also Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231, 1237 (Ct. Int'l Trade 2009) ("Because the *Preliminary Results* were favorable to Taifa, and Commerce did not address the AFA issue until after the deadline for case briefs or the PRC-wide rate issue until the *Final Results*, Taifa did not have a fair opportunity to challenge these issues at the administrative level."). This Court has long held that when "Commerce

36

NON-CONFIDENTIAL VERSION

{does} not address the issue challenged before the Court until its final

decision, plaintiff {has} no opportunity to raise the issue at the

administrative level and the exhaustion doctrine {does} not preclude

judicial review.*" LTV Steel Co. v. United States*, 985 F. Supp. 95, 120

(Ct. Int'l Trade 1997) (summarizing the court's holding in *Phillip Bros.,*

*Inc. v. United States*, 630 F. Supp. 1317, 1324 (Ct. Int'l Trade 1986)).

Here, Commerce applied total AFA to Saffron in the *Preliminary*

*Determination* because Saffron engaged in [                    ] during the

POI. Given its total AFA finding, Commerce did not calculate a

dumping margin using Saffron's reported costs and prices. In the *Final*

*Determination*, Commerce, for the first time, calculated a dumping

margin relying on Saffron's reported data but provided no opportunity

to comment on that calculation. As demonstrated above, Commerce's

decision late in the investigation to reverse course prevented it from

verifying Saffron's reported sales and cost data and prevented it from

evaluating affiliated party transactions in accord with its longstanding

practice, resulting in significant errors and omissions in the final

dumping margin.  Accordingly, this Court should remand this matter to

Commerce and instruct the agency to provide parties an opportunity to

NON-CONFIDENTIAL VERSION

comment on the final dumping calculation.

## V.  CONCLUSION

Given the numerous errors in Commerce's *Final Determination* outlined above, this Court should remand this case to Commerce with instruction to: (1) conduct verification of Saffron's reported data, (2) apply the transactions disregarded and major input rules, as appropriate, and (3) provide the parties an opportunity to comment on its revised final dumping calculations.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to Mattress Petitioners*

Date:      December 17, 2021

Court. No. 21-00285

## <u>Certificate of Compliance</u>

The undersigned hereby certifies that the forgoing submission of "Brief of Plaintiffs Brooklyn Bedding, LLC Et Al. In Support of Their Rule 56.2 Motion for Judgment on the Agency Record" filed by Plaintiffs on December 17, 2021, contains 6,791 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 14,000 word limitation set forth in the Standard Chambers Procedures.

BY: <u>/s/ Yohai Baisburd</u>