# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| BROOKLYN BEDDING, LLC ET AL., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court. No. 21-00285 |
| | ) | |
| *Defendant*, | ) | **NON-CONFIDENTIAL VERSION** |
| | ) | |
| and | ) | Business Proprietary Information Removed from Brackets on Pages 17-19. |
| | ) | |
| SAFFRON LIVING CO., LTD. | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |
| | ) | |

## MATTRESS PETITIONERS' REPLY BRIEF

Yohai Baisburd
Chase J. Dunn
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to Mattress Petitioners*

Date:       May 16, 2022

**NON-CONFIDENTIAL VERSION**

# Table of Contents

**Page**

I. ARGUMENT .......................................................................3

   A. Commerce's Failure to Conduct Verification Renders its
*Final Determination* Unlawful .......................................3

   B. Commerce's Unexplained and Unacknowledged Failure to
Follow Its Longstanding Practice of Applying the
Transactions Disregarded and Major Input Rules Was
Unlawful .......................................................................11

   C. Commerce Was Required to Issue a Post-Preliminary
Determination And Afford Interested Parties an
Opportunity to Comment ...............................................21

   D. The Court Should Ignore Saffron's Machinations .......................22

II. CONCLUSION......................................................................25

**NON-CONFIDENTIAL VERSION**

## Table of Authorities

**Page(s)**

**Statutes**

19 U.S.C. § 1677e(a) ............................................................. 3, 5, 7

19 U.S.C. § 1677e(a)(2)(D).................................................. 3, 8, 9, 11

19 U.S.C. § 1677m(i)(1) ....................................................... 3, 4, 10


**Regulations**

19 CFR § 351.307(b)(1)(i) .................................................... 3, 4, 10


**Court Decisions**

*Burlington Truck Lines, Inc. v. United States*, 371
U.S. 156 (1962)..................................................................... 18

*Changzhou Trina Solar Energy Co. v. United States*,
352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ........................ 9

*China Kingdom Imp. & Exp. Co. v. United States*, 31
C.I.T. 1329 (2007) ................................................................ 8

*Ghigi 1870 S.P.A. v. United States*, 547 F. Supp. 3d
1332 (Ct. Int'l Trade 2021) .................................................. 8

*Goodluck India Ltd. v. United States*, 11 F.4th 1335
(Fed. Cir. 2021) .................................................................... 13

*Huvis Corp. v. United States*, 525 F. Supp. 2d 1370
(Ct. Int'l Trade 2007) ........................................................... 13

*Huzhou Muyun Wood Co. v. United States*, 279 F.
Supp. 3d 1215(Ct. Int'l Trade 2017) ................................... 21

NON-CONFIDENTIAL VERSION

*INS v. Yeuh-Shaio Yang*, 519, U.S. 26 (1996) ..........................................13

*Jacobi Carbons AB v. United States*, 313 F. Supp. 3d 1308 (Ct. Int'l Trade 2018) ........................................7

*JBF Rak LLC v. United States*, 38 C.I.T. 1006, 1016 (2014)..............................................................................22

*JTEKT Corp. v. United States*, 33 C.I.T. 1797 (Ct. Int'l Trade 2009) ....................................................9

*Juancheng Kangtai Chem. Co. v. United States*, Slip Op. 15-93 (Ct. Int'l Trade 2015) ...............................25

*Koyo Seiko Co. v. United States*, 36 F.3d 1565 (Fed. Cir. 1994)..........................................................21

*Maverick Tube Corp. v. United States*, 273 F. Supp. 3d 1293 (Ct. Int'l Trade 2017) ...............................4, 5

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, (1983) ....................................18

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ....................................................7

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) ....................................................22

*Ranchers-Cattlemen Action Legal Found. v. United States*, 23 C.I.T. 861 (Ct. Int'l Trade 1999) ...............14

*S.A.P.I. De C.V. v. United States*, 996 F.3d 1283 (Fed. Cir. 2021)..........................................................7

*SEC v. Chenery*, 332 U.S. 194 (1947)..........................................6

*Sucocitrico Cutrale Ltda. v. United States*, 36 C.I.T. 821 (2012)..........................................................11

*Tri Union Frozen Products, Inc. v. United States*, 163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ...............14

**NON-CONFIDENTIAL VERSION**

*Vinh Hoan Corp. v. United States*, 49 F. Supp. 3d
1285 (Ct. Int'l Trade 2015) ........................................................................ 23

*Zhejiang Dunan Hetian Metal Co. v. United States*,
652 F.3d 1333 (Fed. Cir. 2011) .................................................................. 4

**<u>Administrative Determinations</u>**

*Certain Cold-Rolled Steel Flat Products from Brazil:
Final Determination of Sales at Less Than Fair
Value*, 81 Fed. Reg. 49,946 (July 29, 2016) ............................................. 15

*Certain Cut-to-Length Carbon-Quality Steel Plate
Products from the Republic of Korea: Final Results of
Antidumping Duty Administrative Review; 2015-
2016*, 82 Fed. Reg. 42,075 (Sept. 6, 2017) ............................................... 20

*Certain Frozen Fish Fillets from the Socialist
Republic of Vietnam: Final Results of Antidumping
Duty Administrative Review and New Shipper
Reviews; 2010-2011*, 78 Fed. Reg. 17,350 (Mar. 21,
2013) ................................................................................................... 19, 20

*Final Results of Antidumping Duty Administrative
Review; Large Power Transformers from Italy*, 52 Fed.
Reg. 46,806 (Dec. 10, 1987) ...................................................................... 19

*Mattresses from Cambodia: Final Affirmative
Determination of Sales at Less Than Fair Value and
Final Negative Determination of Critical
Circumstances*, 86 Fed. Reg. 15,894 (Mar. 25, 2021) .............................. 16

*Mattresses from Indonesia: Final Affirmative of Sales
at Less Than Fair Value*, 86 Fed. Reg. 15,899 (Mar.
25, 2021) .................................................................................................... 17

NON-CONFIDENTIAL VERSION

*Mattresses from Serbia: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Negative Finding of Critical Circumstances*, 86 Fed. Reg. 15,892 (Mar. 25, 2021) ............................................................. 17

*Mattresses from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,928 (Mar. 25, 2021) ..................................................... *passim*

*Polyethylene Retail Carrier Bags from Indonesia: Final Determination of Sales at Less Than Fair Value, 75 Fed. Reg. 16,431 (Apr. 1, 2010)*.................................................. 4

*Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 Fed. Reg. 29,700 (May 21, 2013)................................................. 22

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| BROOKLYN BEDDING, LLC ET AL., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court. No. 21-00285 |
| ) | |
| *Defendant*, ) | **NON-CONFIDENTIAL VERSION** |
| ) | Business Proprietary |
| and ) | Information Removed |
| ) | from Brackets on Pages |
| SAFFRON LIVING CO., LTD. ) | 17-19. |
| ) | |
| *Defendant-Intervenor*. ) | |
| ) | |

## MATTRESS PETITIONERS' REPLY BRIEF

Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, (hereinafter, "Mattress Petitioners") herein reply to the response briefs filed by Defendant on March 22, 2022, ("Defendant's

NON-CONFIDENTIAL VERSION

Br.") and by Saffron Living Co., Ltd. ("Saffron") on April 12, 2022,

("Saffron's Br.") responding to Mattress Petitioners Rule 56.2 motion

for judgment on the agency record and associated brief ("Mattress

Petitioner's Br.")  As discussed below, neither Defendant nor Saffron

can explain away the fundamental, and unlawful, flaws in the

Department of Commerce's ("Commerce") *Final Determination. See*

*Mattresses from Thailand: Final Affirmative Determination of Sales at*

*Less Than Fair Value*, 86 Fed. Reg. 15,928 (Mar. 25, 2021), Appx1508-

1510, and accompanying Issues and Decision Memorandum ("IDM"),

Appx1459-1475. Put simply, Commerce effectively held the ball until

the very last second and then heaved a shot from midcourt as time

expired.  That is why Commerce failed to conduct verification and apply

the major input and transactions disregarded rules. Accordingly, this

Court should find Commerce's *Final Determination* unsupported by

substantial evidence and otherwise not in accordance with law,

consistent with Mattress Petitioners' Rule 56.2 brief and the

arguments contained herein.

NON-CONFIDENTIAL VERSION

## I.   ARGUMENT

### A. Commerce's Failure to Conduct Verification Renders its *Final Determination* Unlawful

Mattress Petitioners argued that Commerce's *Final Determination* was not supported by substantial evidence nor in accordance with law because Commerce relied on Saffron's reported sales and cost data to calculate a dumping margin but did not conduct verification of that data, as is required in all antidumping investigations under 19 U.S.C. § 1677m(i)(1) and 19 CFR § 351.307(b)(1)(i). *See* Mattress Petitioners' Br. at 18-21. Defendant and Saffron contend that Commerce's violation of its statutory and regulatory duty to conduct verification was lawful because Commerce has statutory authority to rely on "facts otherwise available" pursuant to 19 U.S.C. 1677e(a)(2)(D) when information on the record cannot be verified. *See* Defendant's Br. at 28-32; Saffron's Br. at 18-20. Defendant and Saffron also argue that Mattress Petitioners' request that Commerce not issue a questionnaire in lieu of verification is inconsistent with its argument before this Court. *See* Defendant's Br. at 30; Saffron's Br. at 18-19. As discussed below, Defendant's and Saffron's arguments betray a fundamental misunderstanding of 19 U.S.C. § 1677e(a), mischaracterize Mattress Petitioners' statements

3

**NON-CONFIDENTIAL VERSION**

before Commerce, and are without record support.

*First*, Commerce is required by statute to conduct verification in all antidumping duty investigations when it relies on a respondent's reported data to calculate a dumping margin. *See* 19 U.S.C. § 1677m(i)(1); 19 CFR § 351.307(b)(1)(i). The Court of Appeals for the Federal Circuit ("Federal Circuit") has held this statutory requirement is not discretionary. *See Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1338 (Fed. Cir. 2011) (noting Commerce is "required to 'verify all information relied upon' in making its final determination" in an antidumping duty investigation). Commerce has previously recognized its statutory obligation, explaining that "{s}ection 781(i) of the Act <u>requires</u> that we verify all information upon which we rely in making a final determination in an investigation…The precise nature of an antidumping duty investigation makes it <u>imperative</u> that we verify information" submitted by a respondent "in order for us to calculate an antidumping duty margin." *Polyethylene Retail Carrier Bags from Indonesia: Final Determination of Sales at Less Than Fair Value*, 75 Fed. Reg. 16,431 (Apr. 1, 2010), IDM at Issue 3 (emphasis supplied); *see also Maverick Tube Corp. v. United States*, 273 F. Supp.

NON-CONFIDENTIAL VERSION

3d 1293, 1313 (Ct. Int'l Trade 2017) ("Defendant emphasizes, that Commerce is 'only required to verify factual information relied upon in making its final determination.'").

*Second*, Defendant's and Saffron's arguments are without merit because Commerce did not rely on "facts otherwise available" pursuant to 19 U.S.C. § 1677e(a) to calculate Saffron's dumping margin in the *Final Determination*, except when applying partial adverse facts available ("AFA") to a limited number of sales where Saffron had misrepresented the true producer. In the *Preliminary Determination* issued on November 3, 2020, Commerce did not rely on Saffron's reported sales and cost data and instead applied total AFA because "Saffron had, in the first place, engaged in a scheme to misrepresent the true producers of certain mattresses to avoid payment of cash deposits." IDM at Comment 1, Appx1472. The only thing that changed between that date and the *Final Determination* was Commerce's mind. In the *Final Determination*, Commerce backed away from its preliminary application of total AFA and found "the application of partial AFA to the sales affected by that scheme…is the more appropriate remedy." *Id.* Consequently, Commerce "calculated Saffron's dumping margin based

NON-CONFIDENTIAL VERSION

on partial AFA" for those sales where Saffron had misrepresented the true producer and calculated Saffron's dumping margin for the remainder of its "sales of mattresses manufactured in Thailand using Commerce's normal methodology" (*i.e.*, based on Saffron's reported cost and sales data, not based on facts otherwise available). Memorandum from Commerce, "Final Determination Analysis Memorandum for Saffron Living Co., Ltd." (Mar. 18, 2021), Appx1057.

Defendant conveniently omits any recognition of the fact that Commerce relied on Saffron's reported cost and sales data, not facts otherwise available, in calculating Saffron's dumping margin in the *Final Determination. See* Defendant's Br. at 28-32. Although Saffron acknowledges that Commerce did "not explicitly state" that it was relying on facts otherwise available in the *Final Determination*, it asks this Court to "consider the Final Determination as having been issued under this statutory provision." Saffron's Br. at 18. But the US Supreme Court has held that "courts may not accept counsel's post hoc rationalizations for agency action…it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *SEC v. Chenery*, 332 U.S. 194, 196 (1947). Here,

6

NON-CONFIDENTIAL VERSION

Commerce did not articulate <u>any reason or explanation</u> to explain its failure to conduct verification in the *Final Determination*. Defendant and Saffron would ask this Court to conclude that Commerce's reasoning is "reasonably discernable" even when Commerce proffers no reason. *Cf. Jacobi Carbons AB v. United States*, 313 F. Supp. 3d 1308, 1328 (Ct. Int'l Trade 2018) (noting that it "is not for the court to infer Commerce's reasons for so finding when they are absent –and, thus, not 'reasonably discernable'—from the determination itself").

Moreover, Defendant and Saffron fail to recognize that when Commerce relies on "facts otherwise available" pursuant to 19 U.S.C. § 1677e(a) it is, by definition, not relying on a respondent's reported sales data. As the Federal Circuit explains, "Commerce uses 'facts otherwise available' to 'fill in…gaps' in the administrative record." *Deacero S.A.P.I. De C.V. v. United States*, 996 F.3d 1283, 1295 (Fed. Cir. 2021) (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)). Thus,

> {w}here Commerce determines that a gap in the factual record exists because necessary information is missing, the statute directs the use of 'facts otherwise available,' to supply the needed facts. *See* 19 U.S.C. § 1677e(a). Under the statute a gap may be found to exist when an interested party provides the requested information, 'but the information cannot be

7

**NON-CONFIDENTIAL VERSION**

verified'" in accordance with § 1677m(i). *See* 19 U.S.C. § 1677e(a)(2)(D).

*Ghigi 1870 S.P.A. v. United States*, 547 F. Supp. 3d 1332, 1342 (Ct. Int'l Trade 2021). Thus, "{r}ead according to plain meaning…{19 U.S.C. § 1677e(a)(2)(D)} allows Commerce to <u>substitute facts otherwise available for specific record information</u> provided that the information cannot be verified." *JTEKT Corp. v. United States*, 33 C.I.T. 1797, 1848 (Ct. Int'l Trade 2009) (emphasis supplied).

Furthermore, "Congress explicitly conditioned the application of § 1677e(a)(2)(D) on a finding of fact that the particular information at issue be found to be unverifiable." *Id.* at 1849. A "deliberate refusal to subject certain factual information to a verification procedure is not the equivalent of a valid finding that, for purposes of § 1677e(a)(2)(D), such information 'cannot be verified.'" *China Kingdom Imp. & Exp. Co. v. United States*, 31 C.I.T. 1329, 1340 n. 7 (2007). Indeed, this Court has explicitly rejected a construction of § 1677e(a)(2)(D) that permits Commerce to find that information cannot be verified based on time constraints, explaining that

> the time constraints cited by Commerce obviously do not constitute evidence that the unexamined data 'cannot be verified,' within the intended meaning of that term as used in

NON-CONFIDENTIAL VERSION

> 19 U.S.C. § 1677e(a)(2)(D). Under such an absurd construction of the statute, Commerce could reject any submitted information solely on the ground that verifying the information would have been impracticable, albeit not impossible.

*JTEKT Corp. v. United States*, 33 C.I.T. at n. 17. At bottom, "Commerce need not consider information submitted by respondents that cannot be verified, {but} Commerce must first reasonably show that such information is, in fact, unverifiable." *Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1327 (Ct. Int'l Trade 2018). Commerce made no such finding here.

Finally, Defendant and Saffron mischaracterize Mattress Petitioners' request that "Commerce not {} grant Saffron's request for a questionnaire in lieu of verification." Commerce Memorandum, "Teleconference with Counsel for Petitioners in Commerce's AD Investigations of Mattresses from Thailand" (Dec. 22, 2020), Appx8300. As an initial matter, Mattress Petitioners' objection to issuing a "questionnaire in lieu of verification" is not synonymous with a request to forego verification entirely. Moreover, Mattress Petitioners' statement was made in the context of Commerce's application of total AFA to Saffron in the *Preliminary Determination* a month before

NON-CONFIDENTIAL VERSION

Saffron made a verbal request to receive a questionnaire in lieu of verification. Because Commerce did not rely on any of Saffron's data in the *Preliminary Determination* there was nothing to verify. In responding to Saffron's request, Mattress Petitioners could not have predicted that Commerce would pivot 180 degrees, rely on Saffron's reported cost and sales data, and ignore entirely the statutory requirement to conduct verification in an antidumping duty investigation. Accordingly, Mattress Petitioners' objection to Commerce's issuance of a "questionnaire in lieu of verification" is consistent with its argument before this court that Commerce violated its statutory duty to conduct verification.

In sum, Commerce decided to reverse its preliminary findings late in the proceeding and, as a result, failed to conduct verification, as is required by 19 U.S.C. § 1677m(i)(1) and 19 CFR § 351.307(b)(1)(i). Defendant's and Saffron's attempt to cast Commerce's failure as a mere reliance on "facts otherwise available" is unavailing because (1) Commerce did not articulate this position in the *Final Determination*, and, more fundamentally, (2) Commerce cannot rely on a respondent's reported data as "facts otherwise available." Further, Commerce's

NON-CONFIDENTIAL VERSION

failure to conduct its investigation in accordance with statutory time limits is not a basis for finding information cannot be verified pursuant to 19 U.S.C. § 1677e(a)(2)(D). Accordingly, this Court should find Commerce's *Final Determination* unsupported by substantial evidence and otherwise not in accordance with law.

### B. Commerce's Unexplained and Unacknowledged Failure to Follow Its Longstanding Practice of Applying the Transactions Disregarded and Major Input Rules Was Unlawful

Mattress Petitioners demonstrated in their opening brief that Commerce has a decades-long practice of applying the transactions disregarded and major input rules when a respondent reports meaningful purchases of inputs from affiliated parties. *See* Mattress Petitioners' Br. at 21-25 (quoting the court in *Sucocitrico Cutrale Ltda. v. United States*, 36 C.I.T. 821, 830 (2012) that in "calculating a respondent's cost of production, Commerce's longstanding practice is to determine whether inputs received from affiliated parties have been acquired for less than the value of those same inputs received from unaffiliated parties"). Commerce refused to follow this practice in the *Final Determination*. Yet, Commerce's only "explanation" for this departure from past practice was to simply state that it made a

NON-CONFIDENTIAL VERSION

"methodological choice…not to make any adjustments (*i.e.*, transactions disregarded or major input rule adjustments) for affiliated party transactions." Memorandum from Commerce, "Allegation of a Ministerial Error in the Final Determination" (Apr. 23, 2021), Appx1516-1517. The <u>reasoning behind</u> its "methodological" choice to abandon longstanding practice remains a mystery. Neither Defendant nor Saffron provides any clarity and the arguments they muster in Commerce's defense are unavailing.

*First*, neither Defendant nor Saffron dispute that Commerce has a practice of applying the transactions disregarded and major input rules when a respondent reports meaningful purchases of inputs from affiliated suppliers but contend Commerce's decision was lawful insofar as "there is no {statutory} requirement that Commerce apply either rule." Defendant's Br. at 36; *see also* Saffron's Br. at 20-21 ("the plain language of the statute affords Commerce with discretion in deciding whether to adopt either rule"). But Mattress Petitioners did not argue that application of the transactions disregarded and major input rules were mandatory. Rather, Mattress Petitioners argued that Commerce has developed a practice of applying both rules but abandoned that

12

NON-CONFIDENTIAL VERSION

practice without any explanation or reasoning, rendering its decision unsupported by substantial evidence and not in accordance with law. *See* Mattress Petitioners' Br. at 22-24.

Courts of review have recognized that even where the statute provides Commerce discretion "that discretion can be curbed in the face of a consistent contrary agency practice." *Huvis Corp. v. United States*, 525 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2007). As the U.S. Supreme Court explains, "{t}hough the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, {or} an abuse of discretion….'" *INS v. Yeuh-Shaio Yang*, 519, U.S. 26, 32 (1996). Thus, "Commerce's discretion has limits…Commerce abuses its discretion, for instance, if it departs from a consistent practice without reasonable explanation." *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1342 (Fed. Cir. 2021). Here, Commerce abused its discretion because it failed to follow its longstanding practice of applying the transactions disregarded and

13

**NON-CONFIDENTIAL VERSION**

major input rules when a respondent reports purchases of inputs from affiliated parties and failed to provide any explanation for why it refused to apply this practice.

*Second*, the mere fact that Commerce proceedings are "treated as independent proceedings with separate records and which lead to independent determinations" does not render Commerce's failure to follow past practice lawful. Defendant's Br. at 34 (quoting *Tri Union Frozen Products, Inc. v. United States*, 163 F. Supp. 3d 1255, 1274 n.14 (Ct. Int'l Trade 2016)). Indeed, the purpose of an "agency practice" is to establish a uniform principle or policy that is followed across multiple proceedings and applied consistently to a myriad of factual scenarios. *Cf. Ranchers-Cattlemen Action Legal Found. v. United States*, 23 C.I.T. 861, 885-886 (Ct. Int'l Trade 1999) ("An action by {an agency} becomes an 'agency practice' when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the established practice or procedure."). In addition to citing past agency practice of applying the transactions disregarded rule and major input rules, Mattress Petitioners also cited the companion antidumping cases on mattresses

14

**NON-CONFIDENTIAL VERSION**

from Cambodia, Indonesia, and Serbia as evidence of this practice insofar as Commerce applied both rules, as applicable, in those cases. *See* Mattress Petitioners' Br. at 25-26.

Defendant erroneously argues that Commerce's application of the transactions disregarded and/or major input rules in the companion mattress cases is not relevant because "the facts of this case are different from the facts of the other cases, and even in those other cases where Commerce applied the rules, it did so consistent with the record of those cases." Defendant's Br. at 34-35 (noting Commerce applied both rules in *Mattresses from Cambodia*, only the major input rule in *Mattresses from Serbia*, and only the transactions disregarded rule in *Mattresses from Indonesia*). But the relevant "facts" for purposes of the transactions disregarded and major input rules are whether the respondent purchased inputs from affiliated parties. *Certain Cold-Rolled Steel Flat Products from Brazil: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 49,946 (July 29, 2016), IDM at Comment 10 (noting that under both rules, "the statute directs the Department to test the arm's-length nature of affiliated transactions to determine whether they reflect a market value"). In that sense, the

15

NON-CONFIDENTIAL VERSION

facts of this case are not materially different from the facts of *Mattresses from Cambodia*, *Mattresses from Indonesia*, or *Mattresses from Serbia*—in all four proceedings the respondents sourced meaningful numbers of inputs from affiliated parties. Only in the case of mattresses from Thailand, however, did Commerce fail to follow its practice of applying the transactions disregarded and major input rules.

Moreover, Defendant's observation that Commerce's application of the transactions disregarded and major input rules in the other mattress investigations varied and were "consistent with the record of those cases" does not undermine Mattress Petitioners argument that Commerce failed to apply the transactions disregarded and major input rules "consistent with the record" in this case; in fact, it supports our argument that Commerce unlawfully abandoned its practice in the case at bar. Commerce's application of the transactions disregarded and major input rules varied in the four mattress cases based on whether the input was a major input or a minor one. *See Mattresses from Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 86 Fed. Reg. 15,894 (Mar. 25, 2021), IDM at Comment 1 (applying both the

**NON-CONFIDENTIAL VERSION**

transactions disregarded and major input rules because the respondents' sourced both major and minor inputs from affiliated suppliers); *Mattresses from Serbia: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Negative Finding of Critical Circumstances*, 86 Fed. Reg. 15,892 (Mar. 25, 2021), IDM at Comment 1 (applying the major input rule because the respondent sourced major inputs from affiliated producers); *Mattresses from Indonesia: Final Affirmative of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,899 (Mar. 25, 2021), IDM at Comment 3 (applying the transactions disregarded rule because the respondent sourced minor inputs from affiliated suppliers).

*Third*, Saffron contends that "Commerce's discretion {to not apply the transactions disregarded and/or major input rules} in this case was particularly appropriate given that Saffron demonstrated that adjustments under these provisions would not be warranted." Saffron Br. at 21. Specifically, Saffron argues that "its suppliers [

] and, with respect to the major input rule, "the benchmarks being proposed were not useable since they were not on the

**NON-CONFIDENTIAL VERSION**

same unit basis as its purchases." *Id.* "The short – and sufficient – answer to {Saffron's argument} is that the courts may not accept appellate counsels' *post hoc* rationalizations for agency action. It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169 (1962)). Here, Commerce did not articulate <u>any reason</u> for its refusal to apply the transactions disregarded and/or major input rules and therefore Saffron's arguments are unavailing.

Even if the Court were to consider Saffron's arguments, neither is meritorious. As an initial matter, Saffron's assertion that its "suppliers

[

]" is not supported by record evidence. Saffron Br. at 21. Saffron reported purchasing inputs from [

]. *See* Letter from Saffron, "Response to the Department's Section A Supplemental Questionnaire" (July 23, 2020) at 10, Appx4259. Saffron explained that when its "affiliates sell materials inputs to Saffron, the affiliates <u>usually</u> add <u>approximately</u>

NON-CONFIDENTIAL VERSION

[                                                    ].” *Id.* (emphasis

supplied). However, what Saffron's affiliated suppliers "usually" or

"approximately" do does not demonstrate that all of the affiliated

suppliers' prices were at arms' length. Indeed, in support of this

assertion Saffron provided only one exhibit concerning purchases from

[           ] as an "illustration," but did not demonstrate all inputs

purchased from that supplier were at arm's length. *Id.* at Exhibit A-20,

Appx4499-4504. Notably, Saffron reported purchasing inputs from

[                                                ], and no record evidence

supports Saffron's assertion that such inputs were purchased at arms'

length. *Id.* at 10, Appx4259.

   Moreover, Saffron's claimed inability to convert its own units (*i.e.*,

USD/mt, USD/piece) into USD/kg falls flat. *See* Saffron's Br. at 21.

Commerce is often confronted with respondents who use a wide variety

of units of measure in their books and records and relies on well-

established conversion factors in its calculations. *See, e.g., Final Results

of Antidumping Duty Administrative Review; Large Power Transformers

from Italy*, 52 Fed. Reg. 46,806 (Dec. 10, 1987), IDM at Comment 41

(applying a conversion factor for quarts per liter); *Certain Frozen Fish*

NON-CONFIDENTIAL VERSION

*Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and New Shipper Reviews; 2010-2011*, 78 Fed. Reg. 17,350 (Mar. 21, 2013), IDM at 17 (applying a conversion factor for meters per kilogram consumption ratio). In cases where Commerce lacks a usable conversion factor for an "apples-to-apples comparison" it has developed a practice of "compar{ing} the prices of the inputs obtained from the affiliated supplier to the affiliated supplier's cost of producing the inputs." *Certain Cut-to-Length Carbon-Quality Steel Plate Products from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 82 Fed. Reg. 42,075 (Sept. 6, 2017), IDM at Comment 5. Thus, the lack of usable conversion factors does not prevent Commerce from conducting a transactions disregarded or major input analysis.

In sum, neither Defendant nor Saffron dispute that Commerce has a longstanding practice of applying the transactions disregarded and major input rules when a respondent reports meaningful purchases of production inputs from affiliated suppliers. Because Commerce failed to discuss either rule, or its reasons for abandoning its longstanding practice, in the *Final Determination*, any attempt by Defendant or

NON-CONFIDENTIAL VERSION

Saffron to defend Commerce's *Final Determination* amounts to *post-hoc* rationalization and is, thus, unavailing. Finally, even if the Court were to consider Saffron's arguments, they are belied by record evidence. Accordingly, this Court should remand this matter to Commerce with instruction to apply the transactions disregarded and major input rules.

### C. Commerce Was Required to Issue a Post-Preliminary Determination And Afford Interested Parties an Opportunity to Comment

Defendant and Saffron assert that Commerce's failure to issue a post-preliminary determination after it completely turned its *Preliminary Determination* on its head was lawful because the statute does not require anything other than issuing a preliminary and final determination. *See* Defendant's Br. at 26; Saffron's Br. at 22-23. However, the "absence of a specific statutory obligation does not relieve the agency of its general duty to execute its statutory mandates reasonably, or to provide interested parties a meaningful opportunity to comment." *Huzhou Muyun Wood Co. v. United States*, 279 F. Supp. 3d 1215, 1225 (Ct. Int'l Trade 2017) (citing *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1573 (Fed. Cir. 1994)). Commerce has previously recognized that

NON-CONFIDENTIAL VERSION

> Issuing a Post-Preliminary Analysis and providing all parties with an opportunity to comment on that analysis embodies the principles of transparency and opening underlying the Act and administrative law in general.  For example, when issues arise or information is submitted too late in a proceeding to be considered for the preliminary results, issuing a Post-Preliminary Analysis ensures that parties are aware of all issues before the Department releases final results and that they have an adequate opportunity to provide comments to the Department.

*JBF Rak LLC v. United States*, 38 C.I.T. 1006, 1016 (2014) (quoting

*Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab*

*Emirates: Final Results of Antidumping Duty Administrative Review;*

*2010-2011*, 78 Fed. Reg. 29,700 (May 21, 2013), IDM at Comment 1).

Nor are Mattress Petitioners challenging Commerce's authority to

change its preliminary analysis in a final determination. *See*

Defendant's Br. at 26 (citing *NTN Bearing Corp. v. United States*, 74

F.3d 1204, 1208 (Fed. Cir. 1995) (noting that "{p}reliminary

determinations are 'preliminary' precisely because they are subject to

change"); Saffron's Br. at 23. Commerce certainly has the discretion to

modify its preliminary findings in a final determination. But, as noted

in Mattress Petitioners' opening brief, Commerce has requested

voluntary remand in past cases where an issue or methodology was

adopted for the first time in a final determination. *See* Mattress

NON-CONFIDENTIAL VERSION

Petitioners' Br. at 34-35 (citing, *inter alia*, *Vinh Hoan Corp. v. United States*, 49 F. Supp. 3d 1285, 1322 (Ct. Int'l Trade 2015)). This ensures that all parties have an opportunity to comment on Commerce's methodology and findings. Accordingly, a remand here is appropriate because Mattress Petitioners had no opportunity to comment on any aspect of Commerce's dumping calculation, performed for the first time in the *Final Determination* (and based on unverified data, as discussed *supra*).

### D. The Court Should Ignore Saffron's Machinations

Saffron seeks to evade thoughtful engagement on Commerce's unlawful actions by falsely asserting that Mattress Petitioners engaged in "ill-considered strategic decisions throughout this proceeding" and that their "position before this Court is contrary to the purpose of judicial review, which is to correct errors made by administrative agencies – not to give interested parties an escape from the consequences of their actions." Saffron Br. at 15-17. Saffron's gambit calls to mind the old adage that if the facts are against you argue the law, if the law is against you argue the facts, and if both are against you pound the table. Much like the origin of some of Saffron's mattresses,

the actual origin of the adage is unclear. The Court should reject Saffron's irrelevant framing.

*First*, Saffron contends that Mattress Petitioners engaged in "ill-considered strategic decisions" when it did not file a case brief anticipating every issue that might arise in Commerce's *Final Determination*. Saffron Br. at 16 ("Plaintiffs surely could have submitted a case brief with the agency, arguing for the continued application of total AFA, while also raising other legal issues, such as the treatment of affiliated party transactions, in the event that the Department reversed course."). Mattress Petitioners, however, do not have a crystal ball and could not anticipate every possible change to Commerce's dumping analysis. Mattress Petitioners could not anticipate that Commerce would reverse its *Preliminary Determination* so late in the proceeding that it would ignore its statutory obligation to conduct verification in antidumping investigations or fail to follow its decades-long practice of applying the transactions disregarded and major input rules, a practice it followed in three other cases that were filed concurrently with the case at bar. This Court has made clear that interested parties are "not required to anticipate that Commerce

24

NON-CONFIDENTIAL VERSION

{would} act contrary to its previous practice." *Juancheng Kangtai Chem. Co. v. United States*, Slip Op. 15-93 at * 117 (Ct. Int'l Trade 2015).

*Second*, Mattress Petitioners did not oppose verification of Saffron. As noted above, Mattress Petitioners objected to Commerce issuing a "questionnaire in lieu of verification" <u>after</u> it had applied total AFA to Saffron in the *Preliminary Determination*. Again, suggesting that Commerce not issue a new COVID-era "questionnaire in lieu of verification" after applying total AFA is not synonymous with arguing Commerce should forego verification entirely. Furthermore, Mattress Petitioners opposed the questionnaire in lieu of verification before it was aware that Commerce would change its analysis and calculate a dumping margin using Saffron's reported data. Given Commerce's statutory duty to conduct verification, it was reasonable for Mattress Petitioners to assume that, should Commerce back away from its preliminary total AFA finding, it would nevertheless comply with the law in calculating a dumping margin. As it turns out, Commerce did not follow the law—hence this lawsuit.

## II.   CONCLUSION

For the foregoing reasons, Mattress Petitioners respectfully

NON-CONFIDENTIAL VERSION

request that the Court remand this matter to Commerce with instruction to: (1) conduct verification of Saffron's reported data, (2) apply the transactions disregarded and major input rules, as appropriate, and (3) provide the parties an opportunity to comment on its revised final dumping calculations.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to Mattress Petitioners*

Date:      May 16, 2022

Court. No. 21-00285

## **Certificate of Compliance**

The undersigned hereby certifies that the forgoing submission of "Mattress Petitioners' Reply Brief," filed by Plaintiffs on May 16, 2022, contains 4,681 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 7,000 word limitation set forth in the Standard Chambers Procedures.

BY: /s/ Yohai Baisburd