**Slip Op. 23-107**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 21-00285**

BROOKLYN BEDDING, LLC, *et al.*,

*Plaintiffs*,

v.

UNITED STATES,

*Defendant*,

and

SAFFRON LIVING CO., LTD.,

*Defendant-Intervenor.*

Before: M. Miller Baker, Judge

**OPINION**

[Granting Plaintiffs' motion for judgment on the agency record.]

Dated: July 20, 2023

*Chase J. Dunn*, Cassidy Levy Kent (USA) LLP of Washington, DC, argued for Plaintiffs. With him on the briefs was *Yohai Baisburd*.

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice of Washington, DC, argued for Defendant. With her on the brief were *Brian M. Boynton*, Principal Deputy

Assistant Attorney General; *Patricia M. McCarthy*, Director; and *L. Misha Preheim*, Assistant Director. Of counsel on the brief was *Savannah Maxwell*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Eric Emerson*, Steptoe & Johnson LLP of Washington, DC, argued for Defendant-Intervenor. With him on the brief was *Hui Cao*.

*Baker*, Judge: In this lawsuit, domestic mattress producers and labor unions representing workers in that industry challenge certain aspects of the Department of Commerce's application of antidumping duties to a Thai mattress importer. Seeking heftier duties, they contend that Commerce failed to comply with its statutory obligations and deviated from its longstanding practice without explanation. Finding their arguments persuasive, the court remands for further administrative proceedings.

I

This case arises out of an antidumping investigation involving mattresses imported from Thailand. *See Mattresses from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,928 (Dep't Commerce Mar. 25, 2021), and accompanying Issues & Decision Memorandum (Mar. 18, 2021), Appx1459–1475.

In its investigation, Commerce selected two mandatory respondents, one of which was Saffron Living Co., Ltd., a Thai mattress producer and importer of

record. In response to Commerce's various questionnaires, the company reported that it "purchases parts of certain raw materials" from two affiliated companies. Appx2752. Saffron further admitted that in making the relevant entries it misrepresented to U.S. Customs and Border Protection both the identity of the producer and the country of origin of some of its imports. Appx1472, Appx1013.

Commerce preliminarily found that Saffron's false statements to Customs warranted application of total facts otherwise available with an adverse inference, commonly referred to as "total adverse facts available" or "total AFA." Appx1006–1008.[1] The Department applied, in essence, the rule of *falsus in uno, falsus in omnibus* and concluded that the company's dishonesty with Customs "call[ed] into question the validity and credibility of all Saffron's submitted information." Appx1015. The result was the highest possible dumping margin of 763.28 percent. Appx1016.

Because it applied total AFA, Commerce declined to verify Saffron's information. *See Mattresses from Thailand: Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 69,568, 69,570 (Dep't Commerce Nov. 3, 2020). The Department then received a new round of briefing before making a final determination. *Id.*

---

[1] For background on adverse facts available, *see Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1336–39 (CIT 2020).

In that briefing, Saffron argued that it had come clean with Commerce about its lies to Customs and that those lies only pertained to "a trivial share of [its] total sales to the United States" during the relevant time. Appx6560. The company urged the Department to assign a dumping margin based on its own data instead of one based on total AFA, and to conduct verification "to the extent that the Department has any concerns about the accuracy of Saffron's reported data." Appx6564–6565.

That argument evidently gained traction, as Commerce's final determination applied partial, rather than total, AFA. The Department explained that even though the company had "engaged in a scheme to misrepresent the true producers of certain mattresses to avoid payment of cash deposits," Appx1472–1473,

> (1) Saffron was forthright in its questionnaire and supplemental questionnaire responses in disclosing the fact that a scheme was in place to misrepresent the true producer of the subject merchandise sold to the United States during the [period of investigation]; and (2) record evidence indicates that the total quantity of the certain mattresses sold by Saffron pursuant to that scheme as a percentage of total U.S. sales during the [period of investigation] does not compromise or undermine the remainder of Saffron's U.S. sales and cost databases.[2]

---

[2] In a separate memorandum, Commerce cited specific data showing (1) Saffron's overall mattress sales to the United

Appx1473. *Cf. Dalian Meisen Woodworking Co. v. United States*, 571 F. Supp. 3d 1364, 1377 (CIT 2021) (faulting the Department for applying total AFA after an importer fully admitted to Commerce that the company falsely advertised to U.S. customers). Therefore, the Department calculated a margin for Saffron's Thai-manufactured mattresses using the company's data, assigned the highest margin of 763.28 percent only "to the sales of mattresses affected by Saffron's evasion scheme," and calculated a weighting factor for each based on what portion of sales each category represented. Appx1474. Weight-averaging the two margins yielded a much lower overall dumping margin of 37.48 percent. Appx1057.

In relying on the company's information for its final determination, however, Commerce did not undertake any form of verification. The Department explained that "[b]ecause Commerce was unable to conduct on-site verification of the information relied upon in making its final determination in this investigation, . . . we have relied upon the information submitted on the record as facts available in making our final determination." *Mattresses from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed.

---

States during the period of investigation, (2) how many third-party mattresses the company sold to the United States during that period, and (3) the tiny percentage of overall sales the latter category represented. Appx1490.

Ct. No. 21-00285 Page 6

Reg. 15,928, 15,929 (Dep't Commerce Mar. 25, 2021) (citing 19 U.S.C. § 1677e(a)(2)(D)).[3]

After Commerce issued its final determination, the domestic industry petitioners filed a ministerial-error allegation under 19 U.S.C. § 1673d(e) and 19 C.F.R. § 351.224(f). Appx6582–6594. They argued that because Saffron reported that "it purchases part of certain raw materials (for example, mattress covers, fabric, and other materials used in the production of mattresses) from two affiliated companies," Commerce had to consider that those purchases might not be arm's-length transactions. Appx6587.[4] They contended that the Department should apply the "transactions disregarded rule" to set aside the reported

---

[3] In some cases, including when Commerce cannot verify information submitted by an interested party, *see* 19 U.S.C. § 1677e(a)(2)(D), the statute requires the Department to "use the facts otherwise available in reaching the applicable determination under this subtitle." *Id.* § 1677e(a)(2).

[4] The concern over whether transactions between affiliated entities reflect arm's-length pricing stems from the reality that a "business enterprise can shift costs and revenue between the related entities" to lower tax and analogous liabilities such as antidumping duties. *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1067 (9th Cir. 2019). This potential incentive for manipulating costs and revenue "is generally not present when similar transactions occur between unrelated business entities. In those instances, each separate unrelated entity has the incentive to maximize profit, and thus to allocate costs and income consistent with economic realities." *Id.* at 1068. An arm's-length price reflects one to which two unrelated entities would have agreed.

prices and then use the "major input rule" to calculate replacement values. Appx6588.

Adopting arguments advanced by Saffron, *see* Appx6604–6606, Commerce rejected the petitioners' ministerial-error allegation on procedural grounds rather than the merits. The Department explained that the issues raised by petitioners were not properly characterized as mere ministerial errors under 19 U.S.C. § 1673d(e) and 19 C.F.R. § 351.224(f) because it was a methodological choice not to make any adjustments for affiliated-party transactions. Appx1516–1517.

II

Dissatisfied with Commerce's final determination, several domestic producers and labor unions that were petitioners in the administrative proceedings timely brought this suit under 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i). ECF 14. The court has subject-matter jurisdiction over such actions under 28 U.S.C. § 1581(c).

Saffron intervened as of right on the side of the government. ECF 24. Plaintiffs then moved for judgment on the agency record. ECF 33 (confidential); ECF 34 (public). The government, ECF 37 (public); ECF 38 (confidential), and Saffron, ECF 39 (confidential); ECF 40 (public), opposed. Plaintiffs replied. ECF 41 (confidential); ECF 42 (public). The court heard oral argument.

In actions such as this brought under 19 U.S.C. § 1516a(a)(2), "[t]he court shall hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

In addition, Commerce's exercise of discretion in § 1516a(a)(2) cases is subject to the default standard of the Administrative Procedure Act, which authorizes a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Solar World Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that in § 1516a cases brought under section 516A of the Tariff Act of 1930, APA "section 706 review applies since no law provides otherwise") (citing 28 U.S.C. § 2640(b)). "[I]t is well-established that an agency action is arbitrary when the agency offers insufficient reasons for treating

similar situations differently." *See SKF USA Inc. v. United States*, 293 F.3d 1369, 1382 (Fed. Cir. 2001) (cleaned up).

### III

Plaintiffs raise three challenges to Commerce's final determination. First, they argue that the Department violated 19 U.S.C. § 1677m(i)(1) and a related regulation in failing to verify the portion of Saffron's data on which Commerce ultimately chose to rely. Second, they contend that the Department's failure to follow a longstanding practice of applying the transactions disregarded and major input rules in evaluating affiliate-party transactions renders its decision arbitrary and capricious. Third, they similarly assert that Commerce failed to follow its longstanding practice of publishing a post-preliminary determination and providing the parties an opportunity to comment on any changes which might take place before the final determination.

### A

"A critical aspect of Commerce's antidumping investigation involves 'verification' of mandatory respondents." *New Am. Keg v. United States*, Ct. No. 20-00008, Slip Op. 21-30, at 6, 2021 WL 1206153, at *2 (CIT Mar. 23, 2021). In arguing that the Department acted contrary to law in failing to conduct verification, Plaintiffs focus on the statutory text, which is unambiguous and provides that Commerce "*shall verify* all information relied upon in making . . . a final determination in an investigation." 19 U.S.C. § 1677m(i)(1) (emphasis added). The Department's

implementing regulations likewise provide that Commerce "*will verify* factual information upon which the Secretary relies" in making a final determination in, among other matters, an "antidumping investigation." 19 C.F.R. § 351.307(b)(1)(i) (emphasis added).[5]

Plaintiffs contend that by changing from total AFA to partial AFA, under which Commerce relies on *some* information submitted by an interested party, the Department concomitantly obligated itself to verify that information. *See Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1338 (Fed. Cir. 2011) ("Commerce is . . . required to verify all information relied upon in making its final determination.") (cleaned up); *cf. Smith Corona Corp. v. United States*, 771 F. Supp. 389, 399 (CIT 1991) ("Verification tests the facts upon which conclusions are to be drawn and indicates whether they will reflect an acceptable degree of certainty," and therefore Commerce has "a statutory obligation to properly verify those facts which it finds dispositive.").

In response to these inexorable statutory and regulatory commands, the government contends that the

---

[5] The regulations ordinarily require the Department to conduct on-site verification and direct personnel making such visits to "request access to all files, records, and personnel which the Secretary considers relevant to factual information submitted." *Id.* § 351.307(d)(1)–(3); *see also Teknik Aluminyum Sanayi A.S. v. United States*, Ct. No. 21-00251, Slip Op. 23-33, at 4, 2023 WL 2533457, at *1 (CIT Mar. 16, 2023) (discussing § 351.307(d) and noting that Commerce conducted verification via questionnaire when COVID-19 made on-site verification impracticable).

Department was "unable to conduct" verification, "or even issue 'in lieu of verification' questionnaires[,] once it determined that only partial AFA should apply to certain mattresses." ECF 37, at 30 (citing Appx1472 n.62). But Commerce did not say it was "unable to conduct" *any* form of verification—rather, it stated that it could not perform *on-site* verification,[6] 86 Fed. Reg. at 15,929, because the preliminary determination had used total AFA. Appx1472 n.62.[7] The government's "unable" argument is therefore post hoc rationalization. *Cf. SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Echoing the final determination's reasoning, *see* 86 Fed. Reg. at 15,929, the government further argues that because the Department was unable to verify Saffron's information, Commerce could nevertheless use that information as "facts otherwise available" under 19 U.S.C. § 1677e(a)(2)(D). *See* ECF 37, at 31–32. But that reading would eviscerate the separate requirement that Commerce "*shall* verify all information relied upon in making . . . a final determination in an

---

[6] *Cf. Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1313–14 (CIT 2022) (recognizing that even if on-site verification is not an option, Commerce has an obligation to consider using some form of virtual verification).

[7] The government's assertion that Commerce could not "even issue 'in lieu of verification' questionnaires" is cut from whole cloth. ECF 37, at 30. Commerce said no such thing.

investigation." 19 U.S.C. § 1677m(i)(1) (emphasis added). The court therefore rejects the government's argument because it would violate the harmonious-reading canon—the principle that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia and Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012).

Commerce's reliance on Saffron's unverified data was contrary to law. On remand, insofar as the Department continues to rely upon that data, it must undertake verification.

B

Plaintiffs argue, and neither the government nor Saffron disputes, that "Commerce's practice of applying both the transactions disregarded and major input rules, as appropriate, in antidumping duty investigations is well established." ECF 34, at 24 (citing several Commerce determinations acknowledging this practice); *see also* 19 U.S.C. §§ 1677b(f)(2) (transactions disregarded rule), (f)(3) (major input rule).

Plaintiffs further point out, again without dispute, that Commerce applied the transactions disregarded and/or major input rules in its companion investigations of Cambodian, Indonesian, and Serbian mattress imports. *Id.* at 21 (citing Commerce determinations in those investigations). They contend, and again neither the government nor the defendant-intervenor disputes, that in its final determination stemming from the investigation of Thai mattress imports, the

Ct. No. 21-00285 Page 13

Department "ignored record evidence of Saffron's substantial affiliated[-]party transactions . . . when calculating a final dumping margin and refused to apply either the transactions disregarded or major input rules." *Id*. at 26.

The government's response to all of this is anemic—the best the government can muster is that "there is no [statutory] requirement that Commerce apply either rule." ECF 37, at 36 (emphasis removed). Saffron makes the same point, *see* ECF 40, at 20–21, along with the post hoc rationalization that it "demonstrated that adjustments under these provisions would not be warranted," *id*. at 21.[8]

Although Commerce was not required to apply either rule, what it could not do is depart from its undisputed practice of applying one or both rules to affiliated-party transactions without at least explaining why it was so deviating from settled practice. "When an agency decides to change course . . . it must adequately explain the reason for a reversal of policy." *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1377 n.5 (Fed. Cir. 2007). Where, as

---

[8] In this court, neither the government nor Saffron contends that Plaintiffs' ministerial-error challenge to the Department's failure to apply the transactions disregarded and/or major input rules was procedurally improper. As noted above, at Saffron's urging Commerce rejected Plaintiffs' challenge on that ground. *See* Appx1516–1517. Because the government and Saffron have abandoned their procedural objection, the court assumes that Plaintiffs properly raised their transactions disregarded/major input argument before the Department.

here, "the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as arbitrary, capricious, or an abuse of discretion." *INS v. Yang*, 519 U.S. 26, 32 (1996) (cleaned up). Commerce's failure to explain why it did not follow its longstanding practice of applying the transactions disregarded and/or major input rules was arbitrary, capricious, and an abuse of discretion. The court will remand for the Department to explain that failure or to apply either or both of those rules.

C

Finally, Plaintiffs contend that by changing course in its final determination without issuing a post-preliminary determination, Commerce denied them the opportunity to comment on its failure to verify Saffron's information and to evaluate affiliated-party transactions in accord with longstanding practice. The court's remand renders it unnecessary to address this issue.

\* \* \*

For the foregoing reasons, the court **GRANTS** judgment on the agency record for Plaintiffs. A separate remand order will issue.

Dated: July 20, 2023 /s/ *M. Miller Baker*
      New York, NY     Judge