A-549-841<br>
Remand<br>
Slip Op. 23-107<br>
POI: 01/01/2019 – 12/31/2019<br>
<b>Public Document</b><br>
E&C/OIV: PAO

***Brooklyn Bedding LLC v. United States***
**Court No. 21-00285, Slip Op. 23-107 (CIT July 20, 2023)**
**Mattresses from Thailand**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT) in *Brooklyn Bedding LLC v. United States*, Court No. 21-00285, Slip Op. 23-107 (CIT July 20, 2023) (*Remand Order*).  This action arises out of the final determination in the less-than-fair-value value (LTFV) investigation of mattresses from Thailand.[1]

The CIT remanded Commerce to: (1) undertake verification of Saffron Living Co., Ltd. (Saffron) in accordance with section 782(i)(1) of the Tariff Act of 1930, as amended (the Act), insofar as Commerce continues to rely upon its data; and (2) explain why Commerce departed from its practice of applying the transactions disregarded and/or major unput rules or, alternatively, to apply either or both of those rules.[2]  On remand, Commerce applied adverse facts available (AFA) as detailed below.  Of note, given Saffron's withdrawal from this proceeding, Commerce could neither verify Saffron's sales and cost data, nor apply the

---

[1] *See Mattresses from Thailand:  Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 15928 (March 25, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM); *see also Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam:  Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia*, 86 FR 26460 (May 14, 2021).
[2] *See Remand Order* at 12 and 14.

transactions disregarded and/or major input rules. As a result, Commerce assigned Saffron a weighted-average dumping margin based on AFA (*i.e.*, 763.28 percent). Moreover, in the absence of a calculated estimated weighted-average dumping margin on the record of this proceeding, we revised the all-others rate by averaging the dumping margins alleged in the Petition,[3] and assigned the rate of 572.56 percent to all-other producers and exporters, consistent with section 735(c)(5)(B) of the Act.[4]

## II.   BACKGROUND

On March 25, 2021, Commerce published the *Final Determination*.[5] As discussed in the *Final Determination*, Commerce did not conduct verification under section 782(i) of the Act, because in the *Preliminary Determination*,[6] Commerce relied upon total AFA, pursuant to sections 776(a) and (b) of the Act, in determining the weighted-average dumping margin for Saffron.[7] Because Commerce was not able to conduct on-site verification of the information relied upon in making its *Final Determination*, pursuant to section 776(a)(2)(D) of the Act, Commerce relied upon the information submitted on the record as facts available for the *Final Determination*.[8] On April 23, 2021, Commerce stated that, for the *Final Determination*, we decided not to make any adjustments (*i.e.*, transactions disregarded or major input rule adjustments) for affiliated party transactions.[9]

---

[3] *See* Brooklyn Bedding LLC's Letter, "Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam: Antidumping and Countervailing Duty Petitions," dated March 31, 2020 (Petition).
[4] *See* Brooklyn Bedding LLC's Letter, "Responses to Petition Second Supplemental Questionnaires," dated April 13, 2020 (Second SQR), at Exhibit VII-Supp2-1.
[5] *See Final Determination*, 86 FR at 15928.
[6] *See Mattresses from Thailand:  Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 FR 69568 (November 3, 2020) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM).
[7] *See Final Determination*, 86 FR at 15928-29.
[8] *Id.*, 86 FR at 15929.
[9] *See* Memorandum, "Allegation of a Ministerial Error in the Final Determination," dated April 23, 2021 (citing Memorandum, "Cost of Production and Constructed Value Calculations Adjustments for the Final Determination – Saffron Living Co., Ltd.," dated March 18, 2021, at 1-2 (showing that Commerce relied on Saffron's cost as reported except for a change in constructed value profit)).

In its July 20, 2023, opinion, the CIT remanded the *Final Determination* to Commerce, ordering that Commerce undertake verification of Saffron insofar as it continues to rely upon the company's data, and explain why Commerce departed from its practice of applying the transactions disregarded and/or major input rules, or, alternatively, to apply either or both of those rules.[10] On August 2, 2023, Commerce issued a supplemental questionnaire to Saffron requesting additional information in order for Commerce to evaluate whether we could apply the transactions disregarded and/or major input rules.[11] Commerce stated in its supplemental questionnaire that the deadline to submit the information requested was due before 5:00 p.m. Eastern Time, August 9, 2023, and that if we did not receive either the requested information or a written extension request prior to the deadline, "{Commerce} may conclude that {Saffron} has decided not to cooperate in this proceeding."[12] Lastly, in the supplemental questionnaire cover letter, Commerce stated that "failure to properly request extensions for all or part of a questionnaire response may result in the application of partial or total facts available, pursuant to section 776(a) of the Act, which may include adverse inferences, pursuant to section 776(b) of the Act."[13] Saffron failed to respond to Commerce's supplemental questionnaire. On August 10, 2023, Saffron withdrew its participation in this proceeding.[14] On August 29, 2023, the petitioners[15] requested that Commerce issue the final results of redetermination and apply total AFA to Saffron.[16]

---

[10] *See Remand Order* at 12 and 14.
[11] *See* Commerce's Letter, "Request for Additional Information," dated August 2, 2023.
[12] *Id.* at 1-2.
[13] *Id.* at 2.
[14] *See* Saffron's Letter, "Notice of Withdrawal," dated August 10, 2023 (Saffron's Withdrawal).
[15] The petitioners are:  Brooklyn Bedding LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Kolcraft Enterprises, Inc.; Leggett & Platt, Incorporated; the International Brotherhood of Teamsters; and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (collectively, the petitioners).
[16] *See* Petitioners' Letter, "Mattress Petitioners' Request for Commerce to Issue Remand Determination and Apply Total Adverse Facts Available to Saffron," dated August 29, 2023.

3

On September 5, 2023, we released the draft results of determination,[17] and offered interested parties the opportunity to submit comments for Commerce's consideration in preparing these final results of redetermination. On September 8, 2023, the petitioners submitted comments supporting the Draft Remand.[18] No other interested party commented on the Draft Remand.

## III. ANALYSIS

Consistent with the CIT's instructions, Commerce sought to verify Saffron's information, and issued a supplemental questionnaire to obtain the information necessary in determining whether the transactions disregarded and major input rules could be applied. However, as detailed above, Saffron failed to respond to Commerce's supplemental questionnaire and, instead, withdrew its participation from this proceeding.

### A. Application of Facts Available and Adverse Inferences

Sections 776(a)(1) and 776(a)(2)(A)-(D) of the Act provide that if necessary information is not available on the record, or an interested party: (1) withholds information that has been requested by Commerce; (2) fails to provide such information by the deadlines for submission of the information, or in the form and manner requested, subject to subsections (c)(1) and (e) of section 782 of the Act; (3) significantly impedes a proceeding; or (4) provides such information but the information cannot be verified as provided in section 782(i) of the Act, Commerce shall use, subject to section 782(d) of the Act, facts otherwise available in reaching the applicable determination.

---

[17] *See* Draft Results of Redetermination Pursuant to Court Remand, *Brooklyn Bedding LLC, et. all v. United States*, Court No. 21-00285, Slip Op. 23 (CIT July 20, 2023), dated September 5, 2023 (Draft Remand).
[18] *See* Petitioners' Letter, "Mattress Petitioners' Letter in Support of Draft Results of Redetermination," dated September 8, 2023 (Petitioners' Comments).

4

In this proceeding, Saffron failed to respond to Commerce's supplemental questionnaire that requested the additional information necessary for evaluating whether we could apply the transactions disregarded and/or major input rules; the company later withdrew from participating in this proceeding.[19]  As a result, we find that necessary information (*i.e.*, the transactions disregarded and/or major input data) are not available on the record, pursuant to section 776(a)(1) of the Act, meriting the use of facts otherwise available.  Additionally, by withdrawing from participating in the proceeding, Saffron:  (1) withheld information requested by Commerce;[20] (2) failed to provide information by the specified deadline;[21] and (3) prevented Commerce from verifying information on the record.[22]  In short, Saffron significantly impeded this proceeding.[23]  Accordingly, pursuant to sections 776(a)(1) and (2)(A)-(D) of the Act, we are relying upon facts otherwise available to determine Saffron's weighted-average dumping margin.

Additionally, section 776(b) of the Act provides that, if Commerce finds that an interested party has failed to cooperate by not acting the best of its ability to comply with a request for information, Commerce may use an inference adverse to the interests of that party in selecting from the facts otherwise available.  Given that Saffron failed to cooperate by not acting to the best of its ability in complying with Commerce's requests for information, we find that an adverse inference is warranted in selecting from the facts otherwise available, consistent with section 776(b) of the Act.

---

[19] *See* Saffron's Withdrawal.
[20] *See* section 776(a)(2)(A) of the Act.
[21] *See* section 776(a)(2)(B) of the Act.
[22] *See* section 776(a)(2)(D) of the Act.
[23] *See* section 776(a)(2)(C) of the Act.

5

**B. Selection and Corroboration of the AFA Rate**

Relying on an adverse inference in selecting from the facts available may include reliance on information derived from the petition, the final determination in the investigation, any previous review, or any other information placed on the record. Section 776(c) of the Act provides that when Commerce relies on secondary information (such as the petition) in making an adverse inference, rather than information obtained in the course of an investigation, it must corroborate, to the extent practicable, that information from independent sources that are reasonably at its disposal. Secondary information is defined as information derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under section 751 of the Act concerning the subject merchandise.[24] The SAA clarifies that "corroborate" means that Commerce will satisfy itself that the secondary information used has probative value.[25] To corroborate secondary information, Commerce will, to the extent practicable, examine the reliability and relevance of the information upon which it is basing the AFA dumping margin, although Commerce is not required to estimate what the dumping margin of an uncooperative interested party would have been if the interested party failing to cooperate had cooperated or to demonstrate that the AFA dumping margin used for the uncooperative party reflects an "alleged commercial reality" of the party.[26]

As stated in our *Preliminary Determination*, during our pre-initiation analysis, we examined the key elements of the export price (EP) and normal value (NV) calculations,

---

[24] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc 103-316, Vol. 1 (1994) (SAA), at 870.
[25] *Id.*
[26] *See* section 776(d)(3) of the Act; *see also, e.g., Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from Japan, and Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of*

including the constructed value calculations used in the Petition to derive NV and the alleged dumping margins.[27]  During our pre-initiation analysis, we also examined information from various independent sources provided either in the Petition or, on our request, in the supplements to the Petition that corroborates key elements of the EP and NV calculations used in the Petition to derive the dumping margins alleged in the Petition.[28]  Based on our examination of the information, as discussed in detail in the Initiation Checklist,[29] we consider the petitioners' EP and NV calculations to be reliable.  Because we obtained no other information that calls into question the validity of the sources of information or the validity of the information supporting the U.S. price or NV calculations provided in the Petition, based on our examination of the aforementioned information, we consider the EP and NV calculations from the Petition to be reliable.  Because we confirmed the accuracy and validity of the information underlying the derivation of the dumping margins alleged in the Petition by examining source documents and affidavits, as well as publicly available information, we determine that the dumping margins alleged in the Petition are reliable for the purposes of this proceeding.

Because there were no other participating cooperative respondents in the LTFV investigation, we relied upon the dumping margins alleged in the Petition, which is the only information regarding the mattress industry reasonably available at Commerce's disposal.  Furthermore, as noted in *GOES from China*,[30] in which the only mandatory respondent also

---

*Administrative Review*s, 61 FR 57391, 57392 (November 6, 1996), unchanged in *Tapered Roller Bearings and Parts hereof, Finished and Unfinished, from Japan, and Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, from Japan; Final Results of Antidumping Duty Administrative Reviews and Termination in Part*, 62 FR 11825 (March 13, 1997).
[27] *Id.*
[28] *Id.*
[29] *See* Checklist, "Antidumping Duty Investigation Initiation Checklist," dated April 20, 2020 (Initiation Checklist) at 7-8.
[30] *See Grain-Oriented Electrical Steel from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value*, 79 FR 59226 (October 1, 2014) (*GOES from China*), and accompanying IDM.

received AFA, "there was no need to review any additional documentation outside of what was submitted in the Petition considering such sources of information fulfill our requirements for corroboration of secondary information."[31] Finally, under section 776(d)(1)(B) of the Act, Commerce may use any dumping margin from any segment of the proceeding under the applicable antidumping duty order when applying an adverse inference, including the highest of such margins. If Commerce is unable to corroborate the highest petition margin using individually calculated margins, it may use the component approach.[32] In selecting an AFA rate, Commerce selects a rate that is sufficiently adverse to ensure that the uncooperative party does not obtain a more favorable result by failing to cooperate than if it had fully cooperated.[33] In an investigation, Commerce's practice with respect to the assignment of an AFA rate is to select the higher of: (1) the highest dumping margin alleged in the petition; or (2) the highest calculated dumping margin of any respondent in the investigation.[34]

With respect to the AFA rate applied to Saffron, we find that it is most appropriate to apply the highest dumping margin alleged in the Petition, and published in the *Initiation Notice*, *i.e.*, 763.28 percent.[35] We determined that the Petition margin of 763.28 percent is reliable when, to the extent appropriate information was available, we reviewed the adequacy and accuracy of the information in the Petition during our pre-initiation analysis and in the *Preliminary*

---

[31] *See GOES from China* IDM at 20; *see also KYD, Inc. v. United States*, 607 F. 3d 760, 765 (Fed. Cir. 2010) (agreeing with Commerce that price quotes and third-party affidavits used in the petition to calculate estimated margins were independent information not requiring additional corroboration and stating that "{t}he relevant inquiry focuses on the nature of the information, not on whether the source of the information was referenced in or included with the petition").
[32] *See, e.g.*, *Polyester Textured Yarn from India: Final Determination of Sales at Less Than Fair Value*, 84 FR 63843 (November 19, 2019), and accompanying IDM at Comment 7.
[33] *See* SAA at 870.
[34] *See, e.g.*, *Certain Uncoated Paper from Indonesia: Final Determination of Sales at Less Than Fair Value*, 81 FR 3101 (January 20, 2016).
[35] *See Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 85 FR 23002 (April 20, 2020) (*Initiation Notice*).

*Determination*.[36] Accordingly, as stated in the *Preliminary Determination*, the highest dumping margin alleged in the petition has probative value and we have corroborated the AFA rate of 763.28 percent to the extent practicable within the meaning of section 776(c) of the Act, by demonstrating that the rate: (1) was determined to be reliable in the pre-initiation stage of this investigation (and we have no information indicating otherwise); and (2) is relevant to the uncooperative mandatory respondents.[37]

**C.  All-Others Rate**

Section 735(c)(5)(A) of the Act provides that the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted-average dumping margins established for exporters and producers individually investigated, excluding any rates that are zero, *de minimis*, or determined entirely under section 776 of the Act. Pursuant to section 735(c)(5)(B) of the Act, if the estimated weighted-average dumping margins established for all exporters and producers individually examined are zero, *de minimis*, or determined entirely under section 776 of the Act, Commerce may use any reasonable method to establish the estimated weighted-average dumping margin for all other producers or exporters.

In this case, the weighted-average dumping margin for both mandatory respondents (Nisco (Thailand) Co., Ltd. (Nisco) and Saffron) is, now, based entirely under section 776 of the Act.[38] Pursuant to section 735(c)(5)(B) of the Act, Commerce's practice under these circumstances has been to assign, as the all-others rate, a simple average of the petition rates.[39] Thus, we have revised the all-others rate by averaging the dumping margins alleged in the

---

[36] *See Preliminary Determination* PDM at 9 (citing Initiation Checklist; and Second SQR at Exhibit VII-Supp2-1).
[37] *Id.* at 10.
[38] *See Final Determination*, 86 FR at 15929.
[39] *See, e.g., Notice of Final Determination of Sales at Less Than Fair Value: Sodium Nitrite from the Federal Republic of Germany*, 73 FR 38986, 38987 (July 8, 2008), and accompanying IDM at Comment 2.

9

Petition, (*i.e.*, 414.77 percent, 548.41 percent, 563.80 percent, and 763.28 percent) and assigning the rate of 572.56 percent to all other producers and exporters, consistent with section 735(c)(5)(B) of the Act.[40]

## IV.    INTERESTED PARTIES' COMMENTS ON THE DRAFT REMAND

On September 5, 2023, Commerce released the Draft Remand[41] and invited interested parties to comment. On September 8, 2023, the petitioners submitted comments supporting the Draft Remand.[42] No other interested party commented on the Draft Remand.

**Comment 1:  Whether Commerce Should Apply AFA to Saffron**

*Petitioners' Comments*:[43]

- Commerce should continue to apply AFA and assign a weighted-average dumping margin of 763.28 percent to Saffron, because Saffron withdrew from the proceeding and Commerce was unable to verify the company's sales and cost data.

No other interested party commented on this issue.

**Commerce's Position:**  We agree with the petitioners and have made no changes to the Draft Remand.[44] As explained in the Draft Remand, and above, Saffron failed to respond to Commerce's supplemental questionnaire that requested the additional information necessary for evaluating whether we could apply the transactions disregarded and/or major input rules.[45] As a result, we found that necessary information (*i.e.*, the transactions disregarded and/or major input data) was not available on the record, pursuant to section 776(a)(1) of the Act, meriting the use of facts otherwise available.[46] Additionally, by withdrawing from participating in the

---

[40] *See* Initiation Checklist at 9; *see also* Second SQR at Exhibit VII-Supp2-1
[41] *See* Draft Remand.
[42] *See* Petitioners' Comments.
[43] *Id.* at 1-2.
[44] *See* Draft Remand at 4-5.
[45] *Id.* at 3.
[46] *Id.* at 4-5.

proceeding, Saffron: (1) withheld information requested by Commerce;[47] (2) failed to provide information by the specified deadline;[48] and (3) prevented Commerce from verifying information on the record.[49] In short, Saffron significantly impeded this proceeding.[50] Accordingly, pursuant to sections 776(a)(1) and (2)(A)-(D) of the Act, we continue to rely upon facts otherwise available in determining Saffron's weighted-average dumping margin for purposes of these final results of redetermination.

Additionally, because Saffron failed to cooperate by not acting to the best of its ability in complying with Commerce's requests for information, we found that an adverse inference was warranted in selecting from the facts otherwise available, consistent with section 776(b) of the Act.[51]

Regarding the AFA rate for Saffron, we continue to find that the highest dumping margin alleged in the Petition, and published in the *Initiation Notice* (*i.e.*, 763.28 percent), is most appropriate.[52]

**Comment 2: Whether Commerce should Revise the All-Others Rate**

*Petitioners' Comments*:[53]

- Pursuant to section 735(c)(5)(B) of the Act, Commerce should continue to use the revised all-others rate of 572.56 percent, *i.e.*, the average of the dumping margins alleged in the Petition.

No other interested party commented on this issue.

---

[47] *See* section 776(a)(2)(A) of the Act.
[48] *See* section 776(a)(2)(B) of the Act.
[49] *See* section 776(a)(2)(D) of the Act.
[50] *See* section 776(a)(2)(C) of the Act.
[51] *See* Draft Remand at 5.
[52] *Id.* at 5-8; *see also Initiation Notice*, 85 FR at 23006.
[53] *See* Petitioners' Comments at 2.

**Commerce's Position:** We agree with the petitioners and have made no changes to the Draft Remand.[54] As explained in the Draft Remand, and above, the weighted-average dumping margin for both mandatory respondents (Nisco and Saffron) is, now, based entirely under section 776 of the Act.[55] Pursuant to section 735(c)(5)(B) of the Act, Commerce's practice under these circumstances has been to assign, as the all-others rate, a simple average of the petition rates.[56] Consequently, for these final results of redetermination, we have made no changes to the revised all-others rate in the Draft Remand (*i.e.*, 572.56 percent), which was derived by averaging the dumping margins alleged in the Petition, (*i.e.*, 414.77 percent, 548.41 percent, 563.80 percent, and 763.28 percent).[57]

## V.     FINAL RESULTS OF REDETERMINATION

Pursuant to the CIT's *Remand Order*, and based on the above analysis, Commerce has assigned a total AFA-based rate of 763.28 percent to Saffron and revised the rate for all-other producers and exporters from 37.48 percent to 572.56 percent. Should the CIT affirm these final results of redetermination, Commerce intends to publish a notice of amended final results in the

---

[54] *See* Draft Remand at 8-9.
[55] *Id.* at 9; *see also Final Determination*, 86 FR at 15929.
[56] *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value:  Sodium Nitrite from the Federal Republic of Germany*, 73 FR 38986, 38987 (July 8, 2008), and accompanying IDM at Comment 2.
[57] *See* Draft Remand at 9; *see also* Initiation Checklist at 9; and Second SQR at Exhibit VII-Supp2-1.

*Federal Register* and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

9/18/2023

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

13